**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq. SBN 136857
Deborah P. Gutierrez, Esq. SBN 240383
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone:   (310) 893-6200
Facsimile:    (310) 988-2930
Email: deborah@prosperlaw.com

Attorneys for Plaintiff,
Carmen R. Naranjo

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN R. NARANJO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SBMC MORTGAGE; JPMORGAN CHASE;  U.S. BANK, NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2006-AR4 TRUST; and Does 1 – 10, inclusive,<br><br>Defendants. | Case No.  '11CV2229 L     WVG<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]**<br>2. **NEGLIGENCE**<br>3. **QUASI CONTRACT**<br>4. **VIOLATION OF 15 U.S.C. § 1692(e), ET SEQ.**<br>5. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.**<br>6. **ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

VERIFIED COMPLAINT                                                                                        -1-

# TABLE OF CONTENTS

**I.**   STATEMENT OF THE CASE..........................................................................3

**II.**   JURISDICTION, VENUE AND PARTIES...................................................4

**III.**   INTRODUCTION........................................................................................6

**IV.**   THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE
TO PLAINTIFF'S HOME..........................................................................12

**V.**   THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT
CONVEYED NO INTEREST TO US BANK.............................................14

**VI.**   THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT
THAT CONVEYED NO AUTHORITY TO CRC TO ACT AS THE FORECLOSING
TRUSTEE..................................................................................................16

**VII.**   PLAINTIFF'S LOAN MODIFICATION AND DEBT VALIDATION EFFORTS.....................18

**VIII.**  PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY,
LEGAL AND EQUITABLE DAMAGES.....................................................19

**IX.**   FIRST CAUSE OF ACTION - DECLARATORY RELIEF - 28 U.S.C. §§ 2201, 2202.......21

**X.**   SECOND CAUSE OF ACTION - NEGLIGENCE.........................................22

**XI.**   THIRD CAUSE OF ACTION - QUASI CONTRACT.....................................24

**XII.**   FOURTH CAUSE OF ACTION - VIOLATION OF 15 U.S.C. § 1692, ET SEQ...............25

**XIII.**  FIFTH CAUSE OF ACTION - BUS. AND PROF. CODE SECTION 17200, ET SEQ..........26

**XIV.**  SIXTH CAUSE OF ACTION - ACCOUNTING..............................................28

# COMPLAINT

COMES NOW Plaintiff Carmen R. Naranjo ("Plaintiff" or "Ms. Naranjo"), by and through her counsel, for her Complaint against Defendants SBMC Mortgage (in its capacity as originating lender) (hereinafter "**SBMC**"); JPMorgan Chase (in its capacity as purported mortgage servicer) (hereinafter "**JPMorgan**") and U.S. Bank, N.A. as Trustee for WAMU Mortgage Pass-through Certificates WMALT Series 2006-AR4 Trust (in its capacity as purported beneficiary and assignee of Plaintiff's Deed of Trust) (hereinafter "**US Bank**"),[1] (collectively "Defendants"), pleads as follows:

## I.   STATEMENT OF THE CASE

1.     Plaintiff alleges that Defendants are third-party strangers to her mortgage loan and have no ownership interest entitling them to collect payment or declare a default.  By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiff (and millions of other American homeowners) into believing that they have the right to collect on a debt in which US Bank has no ownership interest.  In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendants have resorted to "papering the file" by fabricating an "Assignment of Deed of Trust," employing individuals who have no authority or personal knowledge of the facts to which they attest and falsely representing to Plaintiff and *to the Court* that they have the right to collect Plaintiff's mortgage payments.  Not only is Defendants' conduct a _criminal violation_ of California's Mortgage Fraud Statute, Cal. Penal Code section 532(f)(a)(4),[2] and an affront to long-standing property laws, but their reliance on fabricated and forged

---

[1] Pursuant to the Audit conducted to determine ownership of Plaintiff's Note and Deed of Trust, the Auditor uncovered some discrepancies as it relates to the Trustee of the Trust.  As such, the Auditor was unable to determine if the Trustee of the Trust was US Bank, as alleged in the purported Assignment by Defendants, or LaSalle Bank NA, which further underscores the need for this lawsuit. However if Plaintiff is incorrect that US Bank is the proper defendant, Plaintiff will amend this Complaint to reflect the accurate Trustee of the Trust.

[2] Cal. Penal Code section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following... (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

documents undermines the integrity of the judicial system.  Through this action, Plaintiff seeks to stop Defendants' fraudulent practices, discover the true holder in due course of her Promissory Note and determine the extent, validity and amount of any purported lien against the Subject Property.

## II.   JURISDICTION, VENUE AND PARTIES

2.     This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.

3.     Section 2201(a) of Title 28 of the United States Code states that "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration."  This Court may assert jurisdiction over this action as, Plaintiff has pled that an actual case and controversy exists and that the action does not 1) involve a needless determination of state law issues; 2) discourage litigants from filing declaratory actions as a means of forum shopping and 3) duplicate litigation.[3]

4.     This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

5.     The unlawful conduct, illegal practices and acts complained of and alleged in this Complaint were all committed in the Southern District of California and involved real property located in the Southern District of California.  Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

6.     Plaintiff is now, and at all times mentioned herein, an individual residing in the County of San Diego.  At all times relevant to this action, Plaintiff has owned real

---

[3] The Ninth Circuit instructs district courts to first determine whether there is an actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).  The *Brillhart* factors require the Court to 1) avoid needless determination of state law issues; 2) discourage litigants from filing declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11–03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011).

VERIFIED COMPLAINT

property commonly known as 5331 Calumet Ave., LaJolla, California 92037 (the "Property").  Further described as Assessor's Parcel Number 415-032-01, with the following legal description:

> LOT 42 OF SUN GOLD POINT IN THE CITY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO 3216, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 14, 1955.[4]

7.     At all relevant times, **SBMC Mortgage** was a California general partnership which closed in 2007.

8.     At all relevant times, **JPMorgan Chase Bank, N.A.** ("JPMorgan") is a National Banking Association organized under the laws of the United States with its main office in Columbus, Ohio.

9.     At all relevant times, **U.S. Bank, N.A.,** as Trustee for WAMU Mortgage Pass-through Certificates WMALT Series 2006-AR4 Trust, is a national banking association with its main office in Minnesota.

10.     Plaintiff is ignorant of the true identity and capacity of Defendants designated as Does 1-10, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial.  However, Plaintiff alleges, on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants and were, and are, responsible for the injuries, damages and harm incurred by Plaintiff.

11.     Plaintiff further alleges, on information and belief, that each such designated Defendant acted, and acts, as the authorized agent, representative and associate of the other Defendants in doing the things alleged herein and acted within the scope of their agency if acting as an agent of the other.

---

[4] The legal description of the subject property in the Deed of Trust incorrectly lists "San Gold Point," rather than "Sun Gold Point."

12.     Whenever reference is made in this Complaint to any act of any Defendant(s) that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

13.     Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

14.     At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint.  Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.  Each Defendant intended to and did encourage, facilitate or assist in the commission of the unlawful acts and thereby aided and abetted the other Defendants in the unlawful conduct.

### III.   INTRODUCTION

15.     During the Mortgage Boom Era of 2002 to 2007, when Plaintiff took out her mortgage, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream – homeownership.  Mortgage lenders and Investment Banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals under the promise that the booming real estate market would continue to boom.  Wall Street took the soon to be toxic loans and attempted (but failed) to bundle them into "Mortgage Backed Securities" through a process known as "Securitization."  These "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

16.     Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in

the form of Credit Default Swaps.[5]  Thus, when the Mortgage Boom turned into a Mortgage Meltdown (which it did), the investors would stand to make even more profit when the mortgage insurance paid them out for their "losses."

17.     However, in their rush to "securitize" the predatory loans, Wall Street investment banks failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities ("Certificates") bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default.  The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans and to provide investment to bond holders – which were expected to be relatively safe.

18.     The Securitized Trusts, if ever formed properly, are subject to and governed by (1) a Pooling and Service Agreement ("PSA"); (2) the Mortgage and Loan Purchase Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin; and (5) Internal Revenue Code section 860A

---

[5] In 1995, JP Morgan created the Credit Default Swap (CDS).  Essentially, a CDS is a form of insurance which protects the buyer of the CDS in case of a loan default.  If the loan defaults, the buyer of the CDS can exchange the CDS for the cash value of the defaulted loan.  One difference between a traditional insurance policy and a CDS is that anyone can purchase a CDS, even those who have no direct "insurable interest" in the lender.  This allowed investors to bet against the average American to default on her mortgage with little risk.  CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, as the likelihood of default on those loans was much higher.  At the end of 2007 the outstanding CDS amount was $62.2 ***trillion*** dollars. *See* Wikipedia, *Credit Default Swaps,* http://en.wikipedia.org/wiki/Credit_default_swap (describing the origination and impact of the Credit Default Swap) (as of August 29, 2011, 07:00 GMT).  Moreover, AIG Insurance Company ("AIG"), who owned a consider market share of these CDS policies, was unable to make good on these policies after the housing bubble burst resulting in AIG seeking a government bailout. *See* Justin Fox, *Why the Government Wouldn't Let AIG Fail?*, TIME Business (September 16, 2008) http://www.time.com/time/business/article/0,8599,1841699,00.html.  Thus, in the end, it was the American taxpayer that bore the burden of these CDS.

1  through 860G, better known as the Real Estate Mortgage Investment Conduit

2  ("REMIC") rules.

3      19.   An essential aspect of the mortgage securitization process is that the Trust

4  must obtain and maintain good title to the mortgage loans comprising the pool for that

5  certificate offering by the stated Closing Date.  This is necessary in order for the Trustee

6  of the Securitized Trust to be legally entitled to enforce the mortgage loans.  In addition

7  to other required documentation required to complete the Collateral File of any given

8  loan, two documents relating to each mortgage loan must be validly transferred to the

9  Trust as part of the securitization process – the promissory note and the security

10 instrument (deed of trust or mortgage).[6]  In this case, on information and belief, neither

11 document was validly transferred.

12     20.   Here, Plaintiff alleges that the "true sales" never took place due to the

13 failure to follow the basic legal requirements for the transfer of a negotiable instrument

14 and thereby, US Bank has no legal, equitable and pecuniary interest in Ms. Naranjo's

15 Note and Mortgage.  As a result thereof, US Bank, which purports to be Ms. Naranjo's

16 creditor, actually has no right, title or interest in Ms. Naranjo's Note and Mortgage and

17 has no right to collect mortgage payments, demand mortgage payments, report

18 derogatorily against Ms. Naranjo's credit or foreclose on her Property.

19     21.   Plaintiff further alleges that the Trust that purportedly owns Plaintiff's Note

20 and Mortgage has been dissolved due to the disbursement and receipt of mortgage

21 insurance payouts to US Bank and the Certificateholders (including, but not limited to,

22 Credit Default Swaps and other mortgage insurance products).  As a result of these

---

[6] Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez*, SJC-10694, 2011 WL 38071.  In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by the Banks failed to demonstrate that they were the holders of the mortgages. The court rejected the Banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage. *Id.*

1 | mortgage insurance payouts, US Bank has been paid in full on Plaintiff's debt
2 | obligation.

3 |     22.    Nonetheless, US Bank and JPMorgan attempt to take advantage of the
4 | complex structured finance system to defraud yet another homeowner.  Plaintiff
5 | anticipates that US Bank and JPMorgan will seek a Court-sanctioned bailout by
6 | submitting a blatantly fabricated "Assignment" via a Request for Judicial Notice;
7 | thereby, committing fraud on the Court and attempting to further mislead Plaintiff into
8 | believing that US Bank and/or JPMorgan are her actual creditors and are entitled to
9 | enforce her obligation.

10 |     23.    Plaintiff does not dispute that she does owe money on her mortgage
11 | obligation.[7]  Rather, Plaintiff disputes the amount owed and seeks the Court's assistance
12 | in determining who the holder in due course is of her Note and Deed of Trust,
13 | specifically what rights, if any, US Bank and/or JPMorgan have to claim a secured or
14 | unsecured interest in the Note or Mortgage.

15 |     24.    Plaintiff's information and belief is based on (1) a title report and analysis
16 | of the Property's county records; (2) direct written and oral communication with
17 | Defendants; (3) her counsel's research, experience and extensive review of depositions,
18 | case law, amicus briefs, correspondence, news articles, reports and publicly available
19 | securitization documents and practices; (4) a review of the purported "Assignment of
20 | Deed of Trust" signed by Colleen Irby; and (5) US Bank's filings with the Securities
21 | and Exchange Commission ("SEC"), including US Bank's 424B5 Prospectus and the
22 | PSA.  A true and correct copy of the unexecuted PSA is located at:
23 | http://www.sec.gov/Archives/edgar/data/1361533/000127727706000501/exh41to8kpsa
24 | wmalt2006_ar4a.htm.

25 |
26 |

---

27 |     [7] However, simply because Plaintiff does not dispute this fact, the Court should not condone
   | JPMorgan and US Bank's fraudulent and predatory mortgage servicing practices and allow it to collect
28 | on money it was not owed.  Simply put, the Court should not allow JPMorgan or US Bank to trample
   | over 200 years of well-settled property laws just because Plaintiff "owes somebody the money."

25.   On or about February 21, 2006, Ms. Naranjo executed a Note and Mortgage in favor of SBMC obtaining a loan on the Property.

26.   Plaintiff alleges and believes thereon that on or around the time of origination of Ms. Naranjo's loan, SBMC attempted to securitize and sell her loan to another entity or entities.  **That entity was *not* US Bank**.

27.   Plaintiff alleges that SBMC never sold her Mortgage to US Bank and that US Bank and JPMorgan are merely third-party strangers to the loan transaction. Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate that Plaintiff's Note was ever properly endorsed and transferred to US Bank.  In fact, Plaintiff has requested that JPMorgan provide evidence establishing the true and correct owner of her loan.  Although this information should be readily available to any mortgage servicer, JPMorgan has yet to provide any evidence to verify the owner of Plaintiff's Mortgage.

28.   The parties involved in the purported Securitization and transfer of Plaintiff's Note and Mortgage failed to strictly adhere to section 2.01 of the PSA, which requires that Plaintiff's Note and Mortgage be properly endorsed, transferred, accepted and deposited with the WAMU Mortgage Pass-through Certificates WMALT Series 2006-AR4 Trust  (or its custodian) (hereinafter "WAMU Trust") on or before **May 30, 2006**, the "closing date" indicated on the PSA.  The "closing date" is the date by which all of the Notes and Mortgages *must* be transferred into the WAMU Trust.  The failure to do so results in the Note and Mortgage not being part of the WAMU Trust res, such that it is not a loan that US Bank can attempt to collect on.

29.   The failure to deposit and transfer the Note into the WAMU Trust before the closing date is a violation of the PSA and of New York trust law.  Consequently, US Bank, as Trustee for the WAMU Trust, has no legal or equitable right, title or interest in Ms. Naranjo's Note and Mortgage, since US Bank cannot take any action which is not authorized by the Securitization agreements that created and govern the WAMU Trust.

30.     US Bank and/or JPMorgan in an attempt to rectify the fatal break in the chain of title has caused an Assignment of Deed of Trust ("Assignment") to be recorded with the San Diego County Recorder's Office.  This Assignment was not recorded until **May 26, 2010**, almost **four years** to the day *after* the closing date for the WAMU Trust. In addition, the Assignment was purportedly executed by "Colleen Irby" as "Officer" for MERS.   Interestingly, on the same day, Ms. Irby executed a Substitution of Trustee; however, on this document Ms. Irby signed for **JPMorgan** as an Officer.  In fact, Ms. Irby is employed by the foreclosing trustee, California Reconveyance Company.

31.     Both US Bank and JPMorgan intentionally misrepresented to Plaintiff in writing that MERS had assigned the interest in her Note and Mortgage to US Bank.  In fact, no such transfer of interest took place, a fact that US Bank, MERS and Ms. Irby were aware of.  *See* **Exhibit "A"**, attached hereto is a true and correct copy of the Assignment, executed on May 25, 2010.   Plaintiff specifically disputes the contents and authenticity of this document.

32.     The only recorded "Assignment", which was purportedly executed **four years** after the closing date of the trust, purports to transfer the interest in the Note and Mortgage from MERS to US Bank.  This dubious "Assignment" raises numerous red flags and further demonstrates that Plaintiff's Note and Mortgage was not deposited into the Trust by the closing date and that the "Assignment" was fabricated four years later in an attempt to "paper over" the fatal securitization defects.  The failure to deposit the Note into the WAMU Trust before the closing date is a violation of the PSA and of New York trust law.

33.     Ms. Naranjo relied on US Bank and JPMorgan's misrepresentations and she has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiff's home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's home or get title insurance; (3) she has been paying the wrong party for an undetermined

amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether she sent her monthly mortgage payments to the right party; and (5) she has expended significant funds to cover the cost of attorneys' fees and related costs.

34.    In addition to seeking compensatory, consequential, punitive and other damages, most importantly Plaintiff seeks declaratory relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiff in favor of Defendants.

## IV.   THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE TO PLAINTIFF'S HOME

35.    MERS is a private corporation that administers the MERS System, a national electronic registry that purports to track the transfer of ownership interests and servicing rights in mortgage loans, including Ms. Naranjo's loan.  In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages.  Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  Members contractually agree to appoint MERS as their common agent on all mortgages they register in the MERS system.  In essence, MERS privatized the mortgage recording system, creating a situation wherein a borrower can no longer go to the Office of the County Recorder and determine who their lender actually is at any given point in time.

36.    MERS is listed as grantee in the official records maintained at county register of deeds offices.  The lenders were supposed to retain the interest in the promissory notes, as well as the servicing rights to the mortgages, not MERS.

37.    Plaintiff alleges that MERS did not affect an assignment, transfer, negotiation or sale of her Note and Mortgage to any Defendant or Doe Defendant.

38.    The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed").  The Trust Deed conveys a security interest and power of sale in the real estate to the Lender, not MERS.[8]

---

[8] This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and

VERIFIED COMPLAINT                                                                                     -12-

39.     Because MERS is merely an electronic registration system, and not a true pecuniary beneficiary, it did not grant, assign, or transfer any true or pecuniary beneficial interest in Plaintiff's Note and Mortgage.  Contrary to the recitations contained in the "Assignment" purportedly executed on May 25, 2010:  (1) MERS did not receive any value or consideration for Plaintiff's Note and Mortgage (2) MERS did not "grant, assign, or transfer" any interest in Plaintiff's Note and Mortgage; and (3) "Colleen Irby" , the alleged signatory of the purported "Assignments," was not, and is not, an "Officer" for MERS and, therefore, lacked the requisite corporate and legal authority to effect an actual "assignment" of Plaintiff's Note and Mortgage (assuming that MERS had any legal, equitable or pecuniary interest in Plaintiff's Note and Mortgage, which Plaintiff claims it did not).

40.     MERS's own membership rules directly prohibit MERS from ever claiming ownership of any mortgages or negotiable instruments, including Ms. Naranjo's.  *See* **Exhibit "B"** attached herein, MERS Terms and Conditions.  A successor-in-interest to the beneficial interest in the Trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust.  In fact, in a September 2009 deposition, former President of MERS, R.K. Arnold admitted that MERS does not have a beneficial interest in any mortgage; that it does not loan money; and that it does not suffer a default if a borrower fails to repay a mortgage loan.[9]  Therefore, MERS does not own Ms. Naranjo's Note and Mortgage, and did not, *in fact*, "grant, assign, or transfer" any interest therein to US Bank on May 25, 2010.

---

agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of San Diego: [legal description of property].  Deed of Trust at ¶ R.

[9] *See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

41. The alleged "Assignment" of Ms. Naranjo's Note and Mortgage is a fraudulent lien claim and in direct contravention of the laws and customs of California.[10]

42. Therefore, based on the foregoing, MERS did not, in fact, assign any interest to US Bank or JPMorgan, such that US Bank or JPMorgan can engage in debt collection activities, demand mortgage payments or report Ms. Naranjo's payments as late or as being in default.

## V.   THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO US BANK

43. On May 26, 2010, MERS caused an Assignment of Deed of Trust ("Assignment") to be recorded with the County of San Diego. The Assignment alleged that for "value received" MERS granted, assigned and transferred to US Bank all beneficial interest in the Deed of Trust. The Assignment was purportedly signed by "Colleen Irby" as an "Officer" of MERS. Plaintiff alleges, on information and belief, that no such transfer ever occurred and that Colleen Irby is not an "Officer" of MERS.

44. Plaintiff alleges that Colleen Irby is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.[11]

45. These were intentional acts undertaken by JPMorgan and/or US Bank, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have done as evidenced by the instant debt collection activities.

---

[10] Whatever, "necessary to comply with law or custom" means, it does not mean that Countrywide or MERS can contract away their obligations to comply with foreclosure statutes. *In re Salazar*, 448 B.R. 814, 823 (finding that the MERS system is not an alternative to statutory foreclosure laws, which "must be respected," and affirming that "[t]his Court …joins the courts in other states that have rejected MERS' offer of an alternative to the public recording system."). *Id.* at 824.

[11] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFyPC5MNI. Ms. Green was interviewed by "60-Minutes" and admitted that her signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day. These individuals are known as "robo-signers".

46.     This Assignment is a fraudulent lien claim and the execution, filing and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive and unlawful collection of Plaintiff's mortgage payments.

47.     Plaintiff further alleges that any amount owed under the Note is subject to equitable offset by the actual, consequential, special and punitive damages owed to Plaintiff from Defendants SBMC, JPMorgan, MERS and/or US Bank.  The exact amount is currently unknown, but will be determined upon conducting discovery. Plaintiff believes this amount will be in excess of the amount of her debt obligation.

48.     Attempting to "assign" or transfer a Deed of Trust by itself, as Defendants did here, does not allow enforcement of Plaintiff's Note and Mortgage.  As alleged herein, Plaintiff's Note was not properly negotiated, endorsed and transferred to JPMorgan or US Bank who seek to cause its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

49.     California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

50.     On information and belief, none of the Defendants were, or are, present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation and demand mortgage payments.

51.     On information and belief, neither JPMorgan nor US Bank is a nonholder in possession of Plaintiff's Note who has the rights of the holder.

52.     If there is a holder in due course of Plaintiff's Note at issue, pursuant to California Commercial Code section 3301, et seq. and/or the PSA, it is the entity that

1  can establish a pecuniary, legal and equitable interest in the Property and provide an

2  unbroken chain of title to Plaintiff's Note and Mortgage.[12]

3    53.    On information and belief, none of the Defendants were, or are, entitled to

4  enforce Plaintiff's Note pursuant to section 3309 or subdivision (d) of section 3418.

5    54.    Plaintiff alleges that prior to demanding mortgage payments from her; none

6  of the Defendants, nor Doe Defendants, had a secured or unsecured legal, equitable or

7  pecuniary interest in Plaintiff's Note and/or Deed of Trust as required under California

8  law – irrespective of who is actually in physical possession of Ms. Naranjo's Note.

9    55.    Plaintiff alleges that, on information and belief, US Bank, JPMorgan and/or

10 its agents are fraudulently enforcing a debt obligation in which they have no pecuniary,

11 equitable or legal interest.  Thus, JPMorgan and/or US Bank's conduct is part of a

12 fraudulent debt collection scheme.

13 **VI.   THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT
   DOCUMENT THAT CONVEYED NO AUTHORITY TO CRC TO ACT AS
14  THE FORECLOSING TRUSTEE**

15    56.    On May 26, 2010, JPMorgan caused a document purporting to be a

16 Substitution of Trustee ("Substitution") to be recorded with the County of San Deigo.

17 The Substitution alleged that "the present Beneficiary under said Deed of Trust...hereby

18 substitute California Reconveyance Company... as Trustee under said Deed of Trust."

19 The Substitution was purportedly signed by "Colleen Irby" as an "Officer" of

20 JPMorgan.  Plaintiff alleges that no such transfer ever occurred and that Colleen Irby is

21

22    [12] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re
23 Kemp*, Case No. 08-18700-JHW, (Bankr. D. N.J. November 16, 2010) (for publication) exposed the
   shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect
24 "holder in due course" status.  In that case Linda DeMartini described how Countrywide failed to
   adhere to the most rudimentary of securitization procedures, such as transferring the original
25 promissory note to the trusts that had purchased the loans, as required under the pooling and servicing
   agreement.  Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the
26 original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts
   that required the notes to be physically transferred to sponsors, trustees or custodians of the securitized
27 trusts.  The findings in court decisions all over the country, news stories, attorneys' general's
   complaints, and state and federal investigations reveal that business practices like Countrywide's were
28 common place and, like Countrywide, most lenders failed to properly comply with protocols required
   to properly securitize mortgage loans.

VERIFIED COMPLAINT                                                           -16-

not an "Officer" for JPMorgan, but rather an employee of California Reconveyance Company ("CRC").

57.    Provision 24 of the Deed governs the Substitution of Trustee. It provides in relevant part:

> "**Lender**, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument **executed and acknowledged by Lender**.......This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

58.    In violation of Provision 24 and Cal. Civ. Code section 2934(a), the lender failed to file a valid Substitution of Trustee, substituting CRC, as the new trustee. Plaintiff alleges the recorded Substitution is void because JPMorgan was not the current "Lender" at the time of the execution of the Substitution.

59.    JPMorgan recorded a Substitution of Trustee claiming that as the present beneficiary, JPMorgan desired to substitute CRC in as the trustee. Plaintiff alleges that no such substitution occurred.

60.    Plaintiff alleges that Colleen Irby is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

61.    Colleen Irby is a "robo-signer" – an individual who simply sign tens of thousands of foreclosure documents without any personal knowledge of the facts to which they attest to, namely that an interest in a negotiable instrument was legally assigned to a purported assignee. Plaintiff alleges that Ms. Irby is not an "Officer" for JPMorgan, but was actually an employee of CRC as reflected on her "LinkedIn" profile (http://www.linkedin.com/pub/colleen-irby/7/46a/a74) where her title is listed as "TS Section Manager" for CRC.

62.    As such, Colleen Irby is not an "Officer" for JPMorgan and in fact the Substitution was fraudulently signed without JPMorgan's knowledge or authorization.

63.   Colleen Irby was never, in any manner whatsoever, appointed as an "Officer" by JPMorgan, and thus giving her no corporate or legal authority from JPMorgan, or the lender's successors and assigns, to execute the purported "Substitution".

64.   This was an intentional act undertaken by JPMorgan, CRC and/or US Bank, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

65.   The "Substitution" is a fraudulent document and the execution, filing and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive and unlawful collection, and attempts to collect, on Plaintiff's obligation.

66.   Attempting to "substitute" CRC under said Deed of Trust, as Defendants did here, does not allow CRC to act as the Trustee under the Deed of Trust.

## VII.  PLAINTIFF'S LOAN MODIFICATION AND DEBT VALIDATION EFFORTS

67.   Plaintiff applied for a loan modification and followed up numerous times with her assigned agent; however, in the end JPMorgan denied her application.

68.   In an effort to verify and validate her debt, Ms. Naranjo sent a Qualified Written Request ("QWR") letter on or around August 8, 2011, pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), in which they requested that the purported servicer (JPMorgan) provide, among other things, "The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note." 12 U.S.C. § 2605(e) requires that the servicer provide this information and respond to a written request within 60 days of receipt. *See* **Exhibit "C",** a true and correct copy of Plaintiff's QWR, dated August 8, 2011. To date, there has been no response.

## VIII. <u>PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES</u>

69.     The conduct described above by US Bank and/or JPMorgan was malicious because Defendants knew that they were ***not*** acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, said Defendants represented to Plaintiff that they were agents authorized to collect on Plaintiff's debt.

70.     Defendants engaged, and are engaging, in a pattern and practice of defrauding Plaintiff, in that during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and failed to accurately debit fees, all of which caused Plaintiff to overpay in principal and interest on her loan.

71.     On information and belief, at all times material, US Bank and JPMorgan had, and have, actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate accounts.

72.     On information and belief, Plaintiff made payments based on the improper, inaccurate and fraudulent representations as to Plaintiff's accounts.

73.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.

74.     As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiff's home has been slandered, clouded and its salability has been rendered unmarketable.

75.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of her Note and Mortgage actually are, such that they are now subject to double financial jeopardy on one obligation.

76.     As a direct and proximate result of the actions of the Defendants set forth above, ***multiple*** parties can potentially claim an interest in the subject loan.

77.     The conduct of US Bank, SBMC, JPMorgan, MERS and one or more of the Doe Defendants has led to pecuniary damages, as described herein, and in an amount to be proven at trial.

78.     The conduct of US Bank, JPMorgan and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's Note and Deed of Trust, yet they set-out on a course to intentionally and fraudulently cover up this defect by wrongfully recording a fabricated Assignment, which would enable them to ***illegally and fraudulently*** collect on Plaintiff's debt and which in essence has rendered the title to the property unmarketable.

79.     The title to Plaintiff's Property has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against her Property. If the Assignment of Deed of Trust is not cancelled and set aside, Plaintiff will be incurably prejudiced.  Plaintiff will be denied the opportunity to identify and negotiate with her ***true creditor*** and exercise her right to verify and validate her debt.

80.     Plaintiff has offered to tender and is ready, willing and able to unconditionally tender her obligation.[13]

---

[13] The standard is **only that Plaintiff make the offer to tender**, not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) ("...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is ***not*** required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029 (C.D.Cal June 24, 2011), at *16 (emphasis added); *citing Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957). *See also, Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("...requiring Plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.")  In light of the fact that Plaintiff contests the legitimacy of the Defendants' claim to the mortgage payments, it would be ***illogical and inequitable*** to require Plaintiff to actually tender the amount given that Plaintiff dispute whether Defendants have any rights under the loan. *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

**IX.**            **FIRST CAUSE OF ACTION**

**DECLARATORY RELIEF - 28 U.S.C. §§ 2201, 2202**

**[Against All Defendants and Doe Defendants]**

81.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

82.    Section 2201(a) of Title 28 of the United States Code states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

83.    Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

84.    Plaintiff alleges that US Bank, SBMC, JPMorgan and MERS do not have a secured or unsecured legal, equitable or pecuniary interest in the lien evidenced by the Deed of Trust and that the purported assignment has no value since the Deed of Trust is wholly unsecured.

85.    Defendants allege that Plaintiff's Note and Deed of Trust cannot be determined to be unsecured and that they have an enforceable and secured interest in, and lien against, the Plaintiff's Note, Deed of Trust and Property.

86.    Thus, the competing allegations made by Plaintiff, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including, but not limited to, ownership of the Property.

VERIFIED COMPLAINT                                                                    -21-

87.     Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants have any right, title or interest in Plaintiff's Note, Deed of Trust or the Property which authorized them, in fact or as a matter of law, to foreclose or collect Plaintiff's mortgage payments, or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

88.     Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify her true and current creditor/lender and negotiate with them; (2) she will be denied the right to conduct discovery and have US Bank's claim verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) she will be denied the opportunity to discover the true amount she still owes minus any illegal costs, fees and charges.

89.     It is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether US Bank's claim against Plaintiff is enforceable and whether it is secured or unsecured by any right, title or interest in Plaintiff's home.

90.     Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether US Bank's claim against Plaintiff are enforceable and whether they are secured or unsecured by any right, title or interest in Plaintiff's Property.

91.     Furthermore, the conduct of US Bank and/or JPMorgan and one or more of the Doe Defendants and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

**X.**          <u>SECOND CAUSE OF ACTION – NEGLIGENCE</u>

**[Against US Bank, JPMorgan and Doe Defendants]**

92.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

93.     At all times relevant herein, JPMorgan was acting as a purported agent for US Bank.  Defendants are jointly and severally liable for US Bank and/or JPMorgan's negligent and reckless conduct.

94.     US Bank, as the purported beneficiary of the Note and Deed of Trust, and JPMorgan, as the purported mortgage servicer, all have a duty to exercise reasonable care[14] and skill to follow California law with regard to enforcement of monetary obligations and to refrain from taking or failing to take any action against Plaintiff that they did not have the legal authority to do.  This includes not collecting or demanding mortgage payments when they do not have the right to enforce the obligation; causing the Plaintiff to overpay in interest; making derogatory credit reports to credit bureaus; and failing to keep an accurate accounting of Plaintiff's mortgage payments, credits and debits (if JPMorgan is in fact the legally authorized mortgage servicer for Plaintiff).

95.     US Bank and JPMorgan have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do.

96.     US Bank and/or JPMorgan breached that duty when they failed to follow the guidelines established in the PSA to transfer the Note and Deed of Trust into the WAMU Trust by the Closing Date.

---

[14] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991).  However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010).  Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144–45).

97.    As a direct and proximate result of the reckless negligence, utter carelessness and blatant fraud of the Defendants as set forth above, Plaintiff has suffered damages in an amount to be determined at trial.

98.    As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered and continues to suffer, general and special damages in an amount to be determined at trial, including attorneys' fees and the costs of bringing a suit to dispute, validate and challenge said Defendants' purported rights to enforce her debt obligation against her.

## XI.         THIRD CAUSE OF ACTION – QUASI CONTRACT
### [Against US Bank, JPMorgan and Doe Defendants]

99.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

100.   US Bank and/or JPMorgan demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff.  Plaintiff reasonably relied upon US Bank's and/or JPMorgan's assertion that they are, or were, entitled to the benefit of Plaintiff's mortgage payments.

101.   US Bank and/or JPMorgan knowingly accepted payments and retained them for its own use knowing that US Bank and/or JPMorgan did not acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments.  It would be inequitable for US Bank and/or JPMorgan to retain the payments it received from Plaintiff which it did not have legal authority to collect.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law, without regard to the intention of the parties and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

102.   The Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the

person or persons legally entitled to it." *See*, **Exhibit "D"**, attached hereto is a true and correct copy of the Plaintiff's Deed of Trust, dated February 21, 2006.

103.    The obligations to SBMC under the Deed of Trust were fulfilled when SBMC received the balance on the Note as proceeds of the sale of Plaintiff's Note and Mortgage to a presently unknown entity.  JPMorgan and/or US Bank have been unjustly enriched by collecting monthly payments from Plaintiff when it has no interest in her Note.

104.    Plaintiff seeks restitution for any payments she made to US Bank and/or JPMorgan that was not paid to the originating lender or beneficiary, if any.

**XII.**              **FOURTH CAUSE OF ACTION –**

**FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.**

**[Against US Bank, JPMorgan and Doe Defendants]**

105.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

106.    Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt… including the false representation of… the character, amount, or legal status of any debt… and the threat to take any action that cannot legally be taken…"

107.    In illegally attempting to collect on Plaintiff's debt obligation in the manner described herein, Defendants US Bank, as purported assignee, and JPMorgan, as purported mortgage servicer:

(a)    falsely represented the status of the debt, in particular, that it was due and owing to Defendant US Bank and/or JPMorgan at the time the suit was filed;

(b)    falsely represented or implied that the debt was owing to Defendant US Bank and/or JPMorgan as an innocent purchaser for value, when in fact, such an assignment had never taken place;

(c)     threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

(d)     attempted to collect on the promissory note under false pretenses; namely that US Bank was assigned Plaintiff's debt, when in fact they were not.

XIII.      **FIFTH CAUSE OF ACTION – VIOLATION OF**

**BUS. AND PROF. CODE SECTION 17200, ET SEQ.**

**[Against US Bank, JPMorgan and Doe Defendants]**

108.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

109.   Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.  As more fully described above, Defendants' acts and practices are unlawful, fraudulent and likely to deceive.  This conduct is ongoing and continues to this date.

110.   Defendants engage in unlawful,[15] fraudulent and deceptive business practices with respect to mortgage loan servicing, assignments of note and deed of trust and related matters by, among other things:

a.  executing and recording false and misleading documents;[16]

b.  executing and recording documents without the legal authority to do so;

c.  failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

---

[15] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state or municipal, statutory or court-made.  *Saudners v. Superior Court*, 27 Cal.App. 4th 832(1994); *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997).

[16] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.  The facts demonstrate that Defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

    d.   demanding and accepting payments for debts that were non-existent;

    e.   violating the Security First Rule;

    f.   reporting payments as late to credit bureaus without the legal right or authority to do so;

    g.   acting as a beneficiary without the legal authority to do so, and;

    h.   other deceptive business practices as described herein.

111.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws, including 15 U.S.C. § 1692, et seq., Cal. Penal Code section 532(f)(a)(4) and regulations and said predicate acts are therefore per se violations of Cal. Bus. and Prof. Code section 17200, et seq.

112.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and has given, Defendants an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

113.   The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

114.   By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204. Additionally, Plaintiff is therefore entitled to injunctive relief and attorneys' fees as available under Cal. Bus and Prof. Code section 17200 and related sections.

115.   As a direct and proximate result of the actions of Defendants and each of them, stated above, Plaintiff have been injured in that a cloud has been placed upon the title to Plaintiff's Property and Defendants have failed to remove this cloud from Plaintiff's title.

116.   Plaintiff is entitled to an order compelling US Bank, JPMorgan and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon Ms. Naranjo's title and an order enjoining such Defendants from taking such actions again in the future.

**XIV.          SIXTH CAUSE OF ACTION – ACCOUNTING**

**[Against US Bank, JPMorgan and Doe Defendants]**

117.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

118.   US Bank and/or JPMorgan have held themselves out to be Plaintiff's creditor and mortgage servicer.  As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.[17]

119.   As a result of the aforementioned fraudulent conduct, Plaintiff paid US Bank and/or JPMorgan her mortgage payments for a period of approximately five years. However, for the reasons stated herein, none of this money was actually owed to US Bank and/or JPMorgan.  For that reason, these monies are due to be either credited back to Plaintiff in full or credited to the rightful holder in due course.

120.   The amount of the money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

WHEREFORE, Plaintiff prays as follows:

1.      For compensatory, special and general damages in an amount according to proof at trial, but not less than $5,000,000, against all Defendants;

---

[17] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233.  The elements for a claim for accounting are:  1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the Plaintiff that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

2.      For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.      For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the Property, including the purported Assignment of Deed of Trust and the Substitution of Trustee;

4.      For an order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff;

5.      For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

6.      For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

7.      For costs of suit incurred herein;

8.      For reasonable attorneys' fees incurred;

9.      For such other and further relief as the Court may deem proper.

Dated:      September 26, 2011      PROSPER LAW GROUP, LLP

By: _____
Gordon F. Dickson
Deborah P. Gutierrez
Attorneys for Plaintiff,
Carmen R. Naranjo

VERIFIED COMPLAINT

-29-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Carmen R. Naranjo, am the Plaintiff in the above-entitled action.  I have read the above Verified Complaint and I have personal knowledge of the matters stated herein except as to those matters stated upon information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California and the United States, that the foregoing is true and correct as executed this 30 day of August 2011, in the City of LaJolla, County of San Diego.

By: _Carmen R. Naranjo_

Carmen R. Naranjo

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff Carmen R. Naranjo hereby demands a trial by jury on all claims.

3

4      Dated:        September 26, 2011                PROSPER LAW GROUP, LLP

5

6                                                By: _____

7                                                    Gordon F. Dickson
                                                     Deborah P. Gutierrez
8                                                    Attorneys for Plaintiff,
                                                     Carmen R. Naranjo
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT                                                          -31-