1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq., SBN 136857
Deborah P. Gutierrez, Esq., SBN 240383
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone:  (310) 893-6200
Facsimile:  (310) 988-2930
Email:      deborah@prosperlaw.com

Attorneys for Plaintiff,
Carmen R. Naranjo

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CARMEN R. NARANJO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.;<br>U.S. BANK, N.A. AS TRUSTEE FOR<br>WAMU MORTGAGE PASS-<br>THROUGH CERTIFICATES WMALT<br>SERIES 2006-AR4 TRUST; and Does 1<br>– 10, inclusive,<br><br>Defendants. | Case No.  **11CV2229 L (WVGx)**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]**<br>2. **NEGLIGENCE**<br>3. **QUASI CONTRACT**<br>4. **VIOLATION OF 15 U.S.C. § 1692, ET SEQ.**<br>5. **VIOLATION OF 12 U.S.C. § 2605**<br>6. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.**<br>7. **ACCOUNTING**<br>8. **BREACH OF CONTRACT**<br>9. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.      STATEMENT OF THE CASE..................................................................3

II.     JURISDICTION, VENUE, AND PARTIES.........................................4

III.    FACTUAL ALLEGATIONS................................................................6

IV.     FIRST CAUSE OF ACTION –DECLARATORY RELIEF: TO DETERMINE STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]..................................12

V.      SECOND CAUSE OF ACTION – NEGLIGENCE................................14

VI.     THIRD CAUSE OF ACTION – QUASI CONTRACT...........................15

VII.    FOURTH CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692, ET SEQ...........17

VIII.   FIFTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605....................19

IX.     SIXTH CAUSE OF ACTION – BUS. AND PROF. CODE SECTION 17200, ET SEQ...........21

X.      SEVENTH CAUSE OF ACTION – ACCOUNTING..............................25

XI.     EIGHTH CAUSE OF ACTION – BREACH OF CONTRACT..................26

XII.    NINTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.........................................................................27

1

## COMPLAINT

2    COMES NOW Plaintiff Carmen R. Naranjo ("Plaintiff" or "Ms. Naranjo"), by

3  and through her counsel, for her Complaint against Defendants JPMorgan Chase Bank,

4  N.A. (in its capacity as purported mortgage servicer) (hereinafter "**JPMorgan**") and

5  U.S. Bank, N.A. as Trustee for the WAMU Pass-Through Certificates WMALT Series

6  2006-AR4 Trust (in its capacity as purported beneficiary and assignee of Plaintiff's

7  Deed of Trust (hereinafter "**U.S. Bank**"), (collectively "Defendants"), pleads as follows:

8  ## I.   STATEMENT OF THE CASE

9    1.    On February 21, 2006, Plaintiff executed a promissory note ("Note") in

10 favor of Countrywide, in the amount of $825,000.00 secured by a deed of trust ("Deed

11 of Trust" or "Mortgage") for the finance of real property located at 5331 Calumet

12 Avenue, La Jolla, California 92037.   Subsequently, Defendants attempted but failed to

13 assign or transfer Plaintiff's Note to U.S. Bank.  As such, Defendants have no authority

14 to collect on the Note and enforce the Deed of Trust.  Despite Defendants' failure to

15 perfect a security interest, U.S. Bank and its agents have attempted to collect on this

16 Note and enforce the Deed of Trust with the knowledge that they have no legal right to

17 do so.  In addition to violating the Fair Debt Collection Practices Act and the Real Estate

18 Settlement Procedures Act, Defendants knowingly concealed their lack of an

19 enforceable security interest by fabricating and recording false documents in the San

20 Diego County Recorder's Office.  Defendants' conduct is not only unfair and fraudulent,

21 but also constitutes a violation of California Penal Code section 532(f)(a)(4).[1]  Through

22 this action, Plaintiff seeks damages resulting from Defendants' unlawful conduct and a

23 declaratory judgment establishing that Defendants have failed to substantiate a perfected

24 security interest in the Note and Deed of Trust (collectively referred to as "Loan").

25

26

27 [1] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section
532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction
28 with the county recorder's office which that person knows to contain a deliberate misstatement,
misrepresentation, or omission.

FIRST AMENDED COMPLAINT                                                          -3-

1  Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and

2  Deed of Trust.

3        2.     In the alternative, if the Court finds that any of the Defendants have an

4  enforceable security interest in either the Note or Deed of Trust, Plaintiff maintains that

5  Defendants have breached Section 2 of the Deed of Trust and the Implied Covenant of

6  Good Faith and Fair Dealing, by charging improper fees and miscalculating and

7  misapplying payments to offset both principal and interest, in addition to the statutory

8  provisions listed above.

9  **II.**      **JURISDICTION, VENUE, AND PARTIES**

10        3.     This Court has original jurisdiction over the claims in this action based on

11  28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692, 12 U.S.C. § 2605, and 42

12  U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to

13  address the deprivation of rights secured by federal law.

14        4.     This Court also has supplemental jurisdiction over the pendant state law

15  claims because they form a part of the same case or controversy under Article III of the

16  United States Constitution, pursuant to 28 U.S.C. § 1367.

17        5.     This Court has original jurisdiction over the claims in this action based on

18  28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits

19  between diverse citizens that involve an amount in controversy in excess of $75,000.00.

20        6.     The unlawful conduct, illegal practices, and acts complained of and alleged

21  in this Complaint were all committed in the Southern District of California and involved

22  real property that is located in the Southern District of California.  Therefore, venue

23  properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

24        7.     Plaintiff is now, and at all times mentioned herein, an individual residing in

25  the County of San Diego, in the State of California.  At all times relevant to this action,

26  Plaintiff has owned real property commonly known as 5331 Calumet Avenue, La Jolla,

27  California 92037 (the "Property"), further described as Assessor's Parcel Number 415-

28  032-01, with the following description:

LOT 42 OF SAN GOLD POINT IN THE CITY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO 3216, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 14, 1955.

8.    At all relevant times, JPMorgan Chase Bank, N.A. is a National Association organized under the laws of the United States with its main office in Columbus, Ohio.

9.    At all relevant times, U.S. Bank, National Association, as Trustee for the WAMU Mortgage Pass-through Certificates WMALT Series 2006-AR4 Trust, is a national banking association with its main office in Minnesota.

10.    Plaintiff is ignorant of the true identity and capacity of Defendants designated as Does 1 - 10, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted.  However, Plaintiff alleges on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiff.  Plaintiff further alleges on information and belief that each such designated Defendant acted, and acts, as the authorized agent, representative, and associate of the other Defendants in doing the things alleged herein.

11.    Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

12.    Any allegation about acts of any corporate or other business Defendant(s) means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

13.    At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.  Additionally, some or all of the Defendants acted as the agent of the other

1  Defendants, and all of the Defendants acted within the scope of their agency if acting as
2  an agent of the other.

3        14.    At all relevant times, each Defendant knew or realized that the other
4  Defendants were engaging in or planned to engage in the violations of law alleged in
5  this Complaint.  Knowing or realizing that the other Defendants were engaging in or
6  planning to engage in unlawful conduct, each Defendant nevertheless facilitated the
7  commission of those unlawful acts.  Each Defendant intended to and did encourage,
8  facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted
9  the other Defendants in the unlawful conduct.

10 **III.   FACTUAL ALLEGATIONS**

11       15.    On or about February 21, 2006, Carmen R. Naranjo executed a Note and
12 Deed of Trust (hereinafter "Mortgage" or "Deed of Trust") in favor of SMBC Mortgage
13 secured by the subject property.

14       16.    On information and belief, Plaintiff alleges that shortly after the origination
15 of her Loan, SMBC Mortgage sold her Loan to another entity or entities.  Those entities
16 are currently unknown but will be identified through discovery.

17       17.    Plaintiff alleges that these unknown entities and Defendants were involved
18 in an attempt to securitize his Mortgage into the WAMU Mortgage Pass-through
19 Certificates WMALT Series 2006-AR4 Trust ("WAMU Trust").  *See* **Exhibit "A,"** a
20 securitization flow chart depicting the securitization process.  In order for Plaintiff's
21 Mortgage to be a part of the WAMU Trust, the entities involved were required to follow
22 various agreements and established laws, including the Trust Agreement that governed
23 the creation of the Trust. Plaintiff alleges the entities involved in the attempted
24 securitization of Plaintiff's Loan failed to adhere to the requirements of the Trust
25 Agreement necessary to properly assign the mortgage loan into the Trust.  As a result,
26 Plaintiff's Loan was not assigned to the WAMU Trust and therefore is not part of the
27 Trust res.  This fatal defect renders Defendants third-party strangers to the underlying
28 debt obligation without the power or right to demand payment, declare default, negotiate

1    her Loan, and foreclose on her Property.  Although Defendants are aware of this fact,

2    they have and continue to act as if they have authority to demand payment, declare

3    default, negotiate his Loan, and foreclose on her Property.  Plaintiff specifically disputes

4    this fact.

5         18.    Plaintiff's information and belief is based on (1) a title report and analysis

6    of the Property's county records; (2) direct written and oral communication with

7    Defendants; (3) her counsel's research, experience, and extensive review of depositions,

8    case law, amicus briefs, correspondence, news articles, reports, complaints by Attorneys

9    General from various states, and publicly available securitization documents and

10   practices; (4) a review of the purported "Assignment of Deed of Trust" signed by

11   "Colleen Irby"; and (5) an audit of U.S. Bank's filings with the Securities and Exchange

12   Commission ("SEC"), including U.S. Bank's 424B5 Prospectus and Pooling and

13   Servicing Agreement ("PSA").

14        19.    Plaintiff's information and belief is further based on a Securitization Audit

15   of her Note and Mortgage that Ms. Naranjo commissioned in order to help her

16   determine (1) the owner of her Loan, and (2) the secured or unsecured status of her Note

17   and Mortgage.

18        20.    Based on the findings of the Audit, Plaintiff believes and thereon alleges

19   her Note was supposed to be properly securitized as a mortgage-backed security that is

20   "pooled" together into a trust pool.  The trust is regulated by New York and Delaware

21   Trust Laws.  Plaintiff alleges her Note was not securitized and that the WAMU Trust

22   has no legal, equitable, or monetary interest in her Promissory Note such that it can

23   demand payment from her.  Further, after conducting the Securitization Audit of Ms.

24   Naranjo's chain of title and U.S. Bank's PSA, it was determined that Ms. Naranjo's

25   Note and Mortgage were not properly conveyed into the WAMU Trust (if it was ever

26   properly formed) because (1) the beneficial interest in Plaintiff's Note and Mortgage

27   were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who

28   were supposed to convey Plaintiff's Note and Mortgage into the Trust) prior to the

1 Closing Date of the Trust and, (2) U.S. Bank failed to perfect the title to Ms. Naranjo's

2 Note and Mortgage by not *strictly* following the requirements of the PSA and other law,

3 regulations, and agreements that govern the WAMU Trust.  As purported Trustee of the

4 WAMU Trust, U.S. Bank cannot take action which is not authorized by the agreements

5 that created and govern the Trust.  U.S. Bank's attempt to acquire an interest in

6 Plaintiff's Loan after the Closing Date indicated in the PSA, is an ultra vires act that is

7 in violation of the Trust Agreement (i.e., the PSA).

8    21.    Plaintiff alleges her Loan was not properly assigned to the WAMU Trust

9 on or before May 30, 2006, the "Closing Date" as set forth in the Trust Agreement.  The

10 Closing Date is the date by which all of the notes and mortgages had to be transferred

11 into the WAMU Trust in order for the mortgage loan to be a part of the trust res.  See

12 **Exhibit "B"**, attached hereto is a true and correct copy of sections 2.04 and 2.05 of the

13 Trust Agreement containing this and other important requirements.

14    22.    Conscious they lacked any beneficial interest in Plaintiff's Loan,

15 Defendants deceptive acts began on or around May 2009 when Plaintiff sought to

16 modify her loan to make the monthly payment more affordable.

17    23.    On or around May 2009, Ms. Naranjo, under the belief JPMorgan had the

18 authority to negotiate her loan, personally went to JPMorgan's downtown San Diego

19 corporate office in an effort to negotiate a loan modification.  At the corporate office

20 Ms. Naranjo was met by "Eric" who supplied her with a request for loan modification

21 packet.  Within a day, Ms. Naranjo filled out the packet in its entirety and submitted all

22 of the necessary financial information referenced in the packet.

23    24.    About a month later, on or around June 2009, Ms. Naranjo followed up

24 with JPMorgan to ascertain the status of her loan modification application.  JPMorgan's

25 representative informed her that her loan modification application paperwork had been

26 lost and required her to complete and return the entire application again.  Stunned, Ms.

27 Naranjo did as she was instructed and completed another loan modification application

28 and again submitted her financial information.

25.     On or around August 2009, Plaintiff suffered unforeseen financial hardship when she was suddenly hospitalized giving birth to her three-month premature child. Simultaneously, due to her absence, her labor-intensive business collapsed.  Shortly thereafter, the interest rate of her adjustable rate mortgage increased thereby causing her monthly mortgage payment to surge.  Between her piling medical expenses, lost income from her failed business, and her increased monthly mortgage payment Ms. Naranjo knew that if she was not able to obtain a loan modification soon she would not be able to keep her home.

26.     Shortly thereafter, on or around September 2009, Plaintiff could no longer afford her monthly mortgage obligation on the Property.

27.     Desperate to keep her property Plaintiff continually tried to follow-up with JPMorgan regarding a loan modification to no avail.  For over 19 months Ms. Naranjo submitted countless loan modification applications to JPMorgan frantically trying to work an affordable loan modification.

28.     Finally, almost a year and a half later, on or around January 11, 2011, JPMorgan sent an appraiser to Ms. Naranjo's property to assess its value.  About a month later, on or around February 2, 2011, JPMorgan sent a second appraiser to Ms. Naranjo's property.

29.     Ms. Naranjo became excited thinking that the presence of an appraiser must mean that JPMorgan was ready to propose a long-awaited loan modification.  For the next month Ms. Naranjo followed up with JPMorgan regarding a loan modification, but no determination was made.

30.     On or around March 3, 2011, feeling she had no options left, Ms. Naranjo filed Chapter 7 Bankruptcy, affirming her home and car, but discharging all of her other unsecured debts.  On or about June 3, 2011 she received a complete discharge.

31.     Almost immediately thereafter, on or about June 30, 2011, Ms. Naranjo received a Notice of Trustee's Sale informing her that the Property would be sold on July 29, 2011.

32.   During the entire loan modification process, Plaintiff relied on the representations made by Defendants that JPMorgan had the power to collect payments and modify her Loan.  Since then, Plaintiff has learned that none of the Defendants had or have any legal or corporate authority to collect on her Loan, service the Loan, or make derogatory credit reports against her credit.

33.   Defendants attempted to cover-up their failure to properly assign, transfer, or grant Plaintiff's Mortgage by purportedly executing and filing a fabricated Assignment of Deed of Trust.

34.   On or around May 25, 2010, Colleen Irby, a purported "Officer" for MERS, executed the purported Assignment of Deed of Trust (hereinafter "Assignment").  The Assignment alleges that for "value received" Mortgage Electronic Registration Systems, Inc. ("MERS") granted, assigned, and transferred to U.S. Bank, National Association as trustee for WAMU Mortgage Pass Through Certificate for WMALT 2006-AR4 Trust all beneficial interest in the Deed of Trust, together with "the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust/Mortgage."  Plaintiff alleges that no such transfer ever occurred and that Colleen Irby had no corporate authority to assign Plaintiff's Note and Mortgage to U.S. Bank and was not an employee of MERS.

35.   On August 8, 2011, in an effort to verify and validate her debt, Ms. Naranjo sent JPMorgan a Qualified Written Request ("QWR") letter pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), in which she requested that the purported servicer (JPMorgan) provide, among other things, a true and correct copy of the original Note and a complete life of the loan transactional history.  *See* **Exhibit "C"**, attached hereto is a true and correct copy of Plaintiff's Qualified Written Request.  The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act")[2]

---

[2] The Dodd-Frank Act was signed into law on July 21, 2010.  The Act amended several statutes including 12 U.S.C. § 2605.  The Act amended 12 U.S.C. § 2605 by shortening the deadline to acknowledge a QWR from fifteen days to only five days and shortening the substantive response deadline from sixty days to thirty days.  There is a fifteen day extension allowed if the borrower is notified of the extension and the reasons for the delay.  In addition, the Dodd-Frank Act requires a

FIRST AMENDED COMPLAINT                                                                      -10-

1  requires that the servicer provide an acknowledgement of receipt of the QWR within

2  five days of receipt and to substantively respond within thirty business days of receipt.

3  Although JPMorgan properly acknowledged the QWR within five days of receipt, in

4  violation of the Dodd-Frank Act JPMorgan failed to provide a substantive response

5  within 30 days.  Specifically, even though the QWR contained the borrower's name,

6  loan number, and property address, JPMorgan's substantive response concerned the

7  same borrower, but instead supplied information regarding an entirely different loan and

8  property.

9       36.    Defendants' failure to provide any information regarding Plaintiff's Note at

10  issue in this case supports Plaintiff's allegations that her Note was not properly

11  transferred to U.S. Bank such that Defendants can enforce Plaintiff's obligation and/or

12  collect Plaintiff's mortgage payments.

13      37.    Plaintiff does not dispute that she owes money on her mortgage obligation.

14  Rather, Plaintiff disputes the amount owed and seeks the Court's assistance in

15  determining who the true creditor is of his Note and Deed of Trust.

16      38.    Ms. Naranjo made payments based on the allegedly improper, inaccurate,

17  and fraudulent representations of Plaintiff's account.

18      39.    Plaintiff's information and belief is based on (1) a title report and analysis

19  of the Property's county records; (2) direct written and oral communication with

20  Defendants; (3) her counsel's research, experience, and extensive review of depositions,

21  case law, amicus briefs, correspondence, news articles, reports, complaints by Attorneys

22  General from various states, and publicly available securitization documents and

23  practices; (4) a review of the purported "Assignment of Deed of Trust" signed by

24  "Colleen Irby"; and (5) an audit of U.S. Bank's filings with the Securities and Exchange

---

26  servicer of a federally related mortgage to "respond to a QWR within 10 business days to a request

27  from a borrower to provide the identity, address, and other relevant contact information about the
owner or assignee of the loan." H.R. 4173 section 1463(a). The Dodd-Frank Act provides available
damages to an individual for failing to respond to a QWR request. Available damages were increased

28  from actual damages plus $1,000.00 to actual damages plus $2000.00. The Dodd-Frank Act also
prohibits various servicing practices and made a few changes to TILA.

1  Commission ("SEC"), including U.S. Bank's 424B5 Prospectus and Pooling and

2  Servicing Agreement ("PSA").

3      40.    Plaintiff's credit and credit score were severely damaged.

4      41.    The title to Ms. Naranjo's home has been slandered, clouded, and its

5  salability has been rendered unmarketable.

6      42.    Plaintiff does not know who the current beneficiary of her Note and

7  Mortgage actually is, such that she is now subject to double financial jeopardy.

8      43.    Plaintiff has offered to and is ready, willing, and able to unconditionally

9  tender her obligation.[3]

10  **FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE**

11  **STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]**

12  **[Against All Defendants and Doe Defendants]**

13      44.    Plaintiff hereby incorporates by reference each and every one of the

14  preceding paragraphs as if the same were fully set forth herein.

15      45.    Section 2201(a) of Title 28 of the United States Code states:

16          In a case of actual controversy within its jurisdiction, except
            with respect to Federal taxes other than actions brought under
17          section 7428 of the Internal Revenue Code of 1986, a
            proceeding under section 505 or 1146 of title 11, or in any civil
18          action involving an antidumping or countervailing duty
            proceeding regarding a class or kind of merchandise of a free
19

---

20      [3] Case law makes clear that **Plaintiff is only required to allege a credible offer of tender**, not

21  actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal.
    July 16, 2009) ("…debtor must allege a credible tender of the amount of the secured debt…").

22  Moreover, tender is *not* required when the owner's action attacks the validity of the underlying debt
    because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic

23  Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D.Cal June 24, 2011)
    (emphasis added) citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148

24  Cal. App. 2d 558, 564 (1957). *See also Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-
    732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("…requiring plaintiff to tender the amount due on his

25  loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any
    rights under the loan."). In light of the fact that Plaintiff contests the legitimacy of the Defendants'

26  claim to the mortgage payments, it would be *illogical and inequitable* to require Plaintiff to actually

27  tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. *See
    Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

28

---

trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

46.  Section 2202 of Title 28 of the United States Code states:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.[4]

47.  Plaintiff alleges that U.S. Bank does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

48.  On May 25, 2010, Defendants claimed they were assigned and transferred a secured enforceable interest in, and a perfected lien against the Plaintiff's Note, Deed of Trust, and Property.

49.  Thus, the competing allegations made by Plaintiff and Defendants, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.[5]

50.  Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

---

[4] It is axiomatic that a cause of action for declaratory relief serves the purpose of adjudicating *future* rights and liabilities between parties. *See Cardellini v. Casey*, 181 Cal. App. 3d 389 (1986) [Emphasis added]; *Bachis v. State Farm Mutual Auto. Ins. Co.*, 265 Cal. App. 2d 722 (1968).

[5] "Declaratory relief is only appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

FIRST AMENDED COMPLAINT

-13-

51.    Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because:  (1) Plaintiff will be denied the opportunity to identify her true and current creditor/lender and negotiate with them; (2) she will be denied the right to conduct discovery and have U.S. Bank's and JPMorgan's claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) she will be denied the opportunity to discover the true amount she still owes minus any illegal costs, fees, and charges.

52.    Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether U.S. Bank's and JPMorgan's claims against Plaintiff are enforceable and whether they are secured or unsecured by any right, title, or interest in Plaintiff's Property.

53.    Furthermore, the conduct of U.S. Bank, JPMorgan, and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION - NEGLIGENCE

### [Against U.S. Bank, JPMorgan, and Doe Defendants]

54.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

55.    At all times relevant herein, JPMorgan was acting as purported agent for U.S. Bank.

56.    U.S. Bank and JPMorgan, as the purported agent and mortgage servicer for U.S. Bank, have a duty to exercise reasonable care[6] and skill to follow California law

---

[6] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991).  However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010).  Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided

FIRST AMENDED COMPLAINT                                                          -14-

1    with regard to enforcement of monetary obligations, and to refrain from taking or failing

2    to take any action against Plaintiff that they did not have the legal authority to do.  This

3    includes not collecting or demanding mortgage payments when they do not have the

4    right to enforce the obligation, causing the Plaintiff to overpay in interest, making

5    derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of

6    Plaintiff's mortgage payments, credits, and debits (if JPMorgan is in fact the legally

7    authorized mortgage servicer for Plaintiff).

8         57.    U.S. Bank and JPMorgan have a duty to exercise reasonable care and skill

9    to refrain from taking any action against Plaintiff that they do not have the legal

10   authority to do.  As a direct and proximate result of the reckless negligence, utter

11   carelessness, and blatant fraud of the Defendants as set forth above, the chain of title to

12   Plaintiff's Property has been rendered unmarketable and fatally defective and has caused

13   Plaintiff to lose saleable title to the subject property.

14        58.    U.S. Bank and/or JPMorgan breached that duty when they failed to follow

15   the guidelines established in the PSA requiring the transfer of the Note and Deed of

16   Trust into the WAMU Trust by the Closing Date.

17        59.    As a direct and proximate result of the negligence and carelessness of the

18   Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and

19   special damages in an amount to be determined at trial, including attorneys' fees and

20   costs of bringing suit to dispute, validate, and challenge said Defendants' purported

21   rights to enforce their debt obligation against them.

22   **THIRD CAUSE OF ACTION – QUASI CONTRACT**

23   **[Against U.S. Bank, JPMorgan, and Doe Defendants]**

24        60.    Plaintiff hereby incorporates by reference each and every one of the

25   preceding paragraphs as if the same were fully set forth herein.

26

27

28   in the commission of the tort.  *Id.* citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

61.    U.S. Bank attempted but failed to become a party to the Note and Deed of Trust when it was purportedly assigned SBMC Mortgage's interest in Plaintiff's Note and Deed of Trust.  U.S. Bank and/or JPMorgan demanded monthly mortgage payments from Plaintiff starting in February 21, 2006 and continued to collect payments from Plaintiff for over five and a half years.  Plaintiff reasonably relied upon U.S. Bank and/or JPMorgan's assertion that they were entitled to payments.

62.    U.S. Bank and/or JPMorgan knowingly accepted payments and retained them for their own use knowing that U.S. Bank and/or JPMorgan did not acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments.  It would be inequitable for U.S. Bank and/or JPMorgan to retain the payments it received from Plaintiff which they did not have legal authority to collect.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.

63.    Section 23 of the Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."  The obligations to Countrywide under the Deed of Trust were fulfilled when Countrywide received the balance on the Note as proceeds of the sale of Plaintiff's Note and Mortgage to a presently unknown entity.  U.S. Bank and/or JPMorgan have been unjustly enriched by collecting monthly payments from Plaintiff when they have no interest his Note or Deed of Trust.

64.    Plaintiff seeks restitution for any payments they made to U.S. Bank and JPMorgan that were not paid to the lender or beneficiary, if any.

/ / /

/ / /

## FOURTH CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692, et seq.

### [Against U.S. Bank and Doe Defendants]

65.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

66.     Defendant U.S. Bank has attempted to collect Plaintiff's debt obligation and thus is a debt collector pursuant to the Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

67.     Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt… [including]the false representation of… the character, amount, or legal status of any debt… or [t]he threat to take any action that cannot legally be taken…." 15 U.S.C. §1692e(2)(A), (5).

68.     Defendants attempted to collect on the Note under false pretenses, namely that U.S. Bank was assigned Plaintiff's debt when in fact they were not.

69.     JPMorgan, acting as Plaintiff's mortgage servicer, has been acting in a manner to mislead Ms. Naranjo into believing that JPMorgan had the authority to demand payments from him.

70.     JPMorgan, acting as Plaintiff's mortgage servicer, threatened to take action, namely engaging in collection activities that cannot legally be taken by them.

71.     As alleged herein, Plaintiff's Note was not properly transferred to U.S. Bank, who seeks to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

72.     On information and belief, U.S. Bank does not have a perfected security interest in Plaintiff's Note such that they can enforce Plaintiff's obligation and/or collect mortgage payments.

73.     Plaintiff alleges that U.S. Bank falsely represented the status of her debt and Defendants' ability to enforce Plaintiff's debt obligation, in which they have no pecuniary, equitable, or legal interest.

74.     The conduct described above by U.S. Bank, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, Defendants continued to demand and collect Plaintiff's mortgage payments.

75.     On information and belief, U.S. Bank engaged and is engaging in a pattern and practice of defrauding Plaintiff, in that during the entire life of the mortgage Loan, U.S. Bank failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

76.     On information and belief, at all times material, U.S. Bank had, and has, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate account.  Plaintiff made payments based on these improper, inaccurate, and fraudulent representations.

77.     The foregoing acts and omissions of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

78.     Plaintiff could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e) because Defendants fraudulently concealed the fact that they were not entitled to enforce Plaintiff's debt obligation and that they were falsely representing to Plaintiff that the character and amount of money Plaintiff still owed on her debt.[7]

---

[7] "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 905 (2009) citing *Santa Maria*, 202 F.3d at 1178; see also *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a

FIRST AMENDED COMPLAINT                                                                    -18-

79.     As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each and every Defendant herein.

80.     Plaintiff relied on U.S. Bank's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether she sent her monthly mortgage payments to the right party; (5) her credit and credit score have been damaged; and (6) she has expended significant funds to cover the cost of attorneys' fees and related costs.

## FIFTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605 (RESPA)

### [As Against JPMorgan and one or more of the Doe Defendants]

81.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

82.     Plaintiff's Loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, Regulation X, and the Dodd-Frank Act.

83.     On or about August 8, 2011, Plaintiff sent a Qualified Written Request ("QWR") to JPMorgan, via U.S. Post Certified Mail.  *See* **Exhibit "C."**

---

claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the Plaintiff's control made it impossible to file a claim on time.") (citation omitted).

84.     On information and belief, JPMorgan received the QWR on or about August 23, 2011.

85.     The QWR contained information to enable JPMorgan to identify Plaintiff's Loan including the borrower's name, loan number, and property address. Also, the QWR contained requests for information of the loan, specifically the identity and contact information of the creditor of Plaintiff's Note, a complete loan history, accumulated late fees and charges, and requested information to verify the validity of the purported debt owed to U.S. Bank.

86.     JPMorgan acknowledged the receipt of Plaintiff's QWR within five (5) day of receipt, as required by section 1463(c) of the Dodd-Frank Act.

87.     However, JPMorgan's response to Plaintiff's QWR concerned the same borrower; but it did not concern the same loan number or property address as identified in the QWR.  As a result, JPMorgan failed to provide a substantive response to Plaintiff's QWR within thirty (30) business days of receipt, as required by the Dodd-Frank Act.  See **Exhibit "D"**, attached hereto is a true and correct copy of JPMorgan's substantive response to Plaintiff's QWR.

88.     Because the Loan is subject to RESPA, the Dodd-Frank Act, and Regulation X, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

89.     Defendants violated Section 6 of Regulation X upon receipt of Plaintiff's QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmitting to the borrower a written notification of the correction; and (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in section 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

90.     JPMorgan violated 12 U.S.C. § 2605 and is subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damages. *See* 12 U.S.C. § 2605.

91.    The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiff's Loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud on his Property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial.

92.    As a direct and proximate result of the violations of RESPA, Dodd-Frank Act, and Regulation X by JPMorgan, Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

93.    As a result of JPMorgan's violations of 12 U.S.C. § 2605, RESPA, the Dodd-Frank Act, and Regulation X, Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether he sent his monthly mortgage payments to the right party; (5) her credit and credit score have been damaged; and (6) she has expended significant funds to cover the cost of attorneys' fees and related costs.

## SIXTH CAUSE OF ACTION -

## VIOLATION OF BUS. AND PROF. CODE SECTION 17200, ET SEQ.

### [Against U.S. Bank, JPMorgan, and Doe Defendants]

94.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

95.    Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

FIRST AMENDED COMPLAINT

-21-

96.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Bus. and Prof. Code section 17200, et seq.

97.   Cal. Bus. and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

98.   U.S. Bank's conduct, for the reasons stated herein, is in direct violation of 15 U.S.C. § 1692, et seq.

99.   JPMorgan's conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605.

100.   Defendants U.S Bank's and/or JPMorgan's conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code section 532(f)(a)(4).

101.   Defendants U.S. Bank and/or JPMorgan engaged in unfair, unlawful,[8] and fraudulent business practices with respect to mortgage loan servicing and related matters.

102.   Defendants failed to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095.

103.   Defendants demanded and accepted payments for debts that were non-existent.

104.   Defendants reported payments as late to credit bureaus without the legal right or authority to do so.

105.   Defendants acted as a beneficiary without the legal authority to do so.

106.   Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiff's Note and Mortgage and engaged in other illegal debt collection activities.

---

[8] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saunders v. Superior Court*, 27 Cal. 4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

FIRST AMENDED COMPLAINT                                                                    -22-

107.   JPMorgan, acting as Plaintiff's mortgage servicer, has been acting in a manner to mislead Ms. Naranjo into believing that JPMorgan had the authority to demand payments from them.

108.   As alleged herein, Plaintiff's Note was not properly transferred to U.S. Bank, who seek to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

109.   On information and belief, U.S. Bank does not have a perfected security interest in Plaintiff's Note such that they can enforce Plaintiff's obligation and/or collect mortgage payments.

110.   Plaintiff alleges, on information and belief, U.S. Bank fraudulently enforced a debt obligation in which they had no pecuniary, equitable, or legal interest. U.S. Bank's conduct is part of a fraudulent debt collection scheme.

111.   The conduct described above by U.S. Bank, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, Defendants continued to demand and collect Plaintiff's mortgage payments.

112.   On information and belief, at all times material, U.S. Bank had, and has, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate account.  Plaintiff made payments based on these improper, inaccurate, and fraudulent representations.

113.   As more fully described above, Defendants' acts and practices are unlawful.  This conduct is ongoing and continues to this date.

114.   As more fully described above, Defendants' acts and practices are likely to deceive members of the public.  This conduct is ongoing and continues to this date.

115.   As more fully described above, Defendants' acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have.  This conduct is ongoing and continues to this date.

116.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein; Defendants violated several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

117.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

118.   The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

119.   By reason of the foregoing, Defendants have been unjustly enriched, by collecting payments that they are not entitled to, and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204.

120.   As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed upon the title to Plaintiff's Property and Defendants have failed to remove this cloud from Plaintiff's title.

121.   Plaintiff requests the Court to issue an order compelling JPMorgan, U.S. Bank, and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon his title and an order enjoining such Defendants from taking such actions again in the future.

122.   As a direct and proximate result of the violations of Cal. Bus. and Prof. Code section 17200 by U.S. Bank, Plaintiff has suffered actual pecuniary damages, including, but not limited to civil liability, restitution, injunctive relief preventing Defendants from continuing to collect mortgage payments, and attorneys' fees, in an amount to be proven at trial.

123.   As a result of U.S. Bank's and JPMorgan's violations of Cal. Bus. and Prof. Code section 17200, Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether he sent his monthly mortgage payments to the right party; (5) her credit and credit score have been damaged; and (6) she has expended significant funds to cover the cost of attorneys' fees and related costs.

## SEVENTH CAUSE OF ACTION - ACCOUNTING

### [Against U.S. Bank, JPMorgan, and Doe Defendants]

124.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

125.   U.S. Bank, and JPMorgan as its purported agent, have held themselves out to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff. [9]

126.   As a result of the aforementioned fraudulent conduct, Plaintiff paid U.S. Bank and JPMorgan his mortgage payments for a period of approximately five years. However, for the reasons stated herein, none of this money was actually owed to U.S. Bank or JPMorgan. For that reason, these monies are due to be either credited back to Plaintiff in full or credited to the rightful owner of Plaintiff's Note and Mortgage.

---

[9] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: (1) fiduciary relationship or other circumstances appropriate to the remedy; and (2) a balance due from the defendant to the plaintiff that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

127.   The amount of the money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiff is informed and believes and thereon alleges that the amount due to her exceeds $75,000.00.

## EIGHTH CAUSE OF ACTION - BREACH OF CONTRACT

### [Against U.S. Bank, JPMorgan, and Doe Defendants]

128.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

129.   In the alternative, if the Court finds that U.S. Bank is a successor in interest to the Deed of Trust pursuant to the terms of the Deed of Trust, Plaintiff alleges that Defendants U.S. Bank and/or JPMorgan breached the Deed of Trust by improperly crediting and debiting her account.

130.   On February 21, 2006, Plaintiff obtained the Loan from SBMC Mortgage and executed a Note and Deed of Trust.

131.   U.S. Bank allegedly became a party to this contract when it was purportedly assigned MERS's interest in Plaintiff's Note and Deed of Trust.

132.   The Deed of Trust sets forth the dates that the monthly principal and interest payments were due and when late fees and other charges could be assessed.

133.   Section 2 of the Deed of Trust states that: "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due."  *See* **Exhibit "E,"** attached hereto, a true and correct copy of the Deed of Trust.

134.   Plaintiff substantially performed all of her conditions in the Deed of Trust, including timely paying his mortgage to Defendants.

135.   Defendants JPMorgan and/or U.S. Bank breached the Deed of Trust by failing to apply the payments made by Plaintiff in the order of priority set forth in

Section 2, and this resulted in improper fees and taxes being added to the balance of the Loan.

136.   Plaintiff was unaware that Defendants were failing to apply the payments in the way set forth in the Deed of Trust because Defendants fraudulently concealed this practice of applying Plaintiff's mortgage payments to Plaintiff's account.  Plaintiff could not have reasonably discovered the impropriety of Defendants behavior because these facts were hidden from him and were not disclosed throughout the servicing of his Loan.

137.   Plaintiff could not have reasonably known of the existence of a breach of the Deed of Trust because Defendants fraudulently concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiff's account that did not comply with Section 2 of Plaintiff's Deed of Trust.

138.   As a proximate result of Defendants' breaches, Plaintiff has suffered compensatory damages in an amount to be proven at trial.  Plaintiff relied on JPMorgan and/or U.S. Bank's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether he sent his monthly mortgage payments to the right party; (5) her credit and credit score have been damaged; and (6) she has expended significant funds to cover the cost of attorneys' fees and related costs.

## NINTH CAUSE OF ACTION - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### [Against U.S. Bank, JPMorgan, and Doe Defendants]

139.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

140.   In the alternative, if the Court finds that U.S. Bank is a successor in interest to the Deed of Trust pursuant to the terms of the Deed of Trust, Plaintiff alleges that Defendants U.S. Bank and JPMorgan breached the implied promise of good faith and fair dealing by making it impossible for Plaintiff to carry out his obligations under the contract because of the improperly applied payments and addition of interest and improper fees to his account.

141.   In every contract or agreement there is an implied promise of good faith and fair dealing.  Each party agrees to refrain from any action that would render performance of the contract impossible, and to do everything that the contract presupposes that each party will do to accomplish its purpose.[10]  The implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.[11]

142.   As alleged above, Plaintiff entered into a contract (Deed of Trust) with SBMC Mortgage and substantially performed the conditions under the Deed of Trust.

143.   U.S. Bank allegedly became a party to this contract when it was purportedly assigned MERS' interest in Plaintiff's Note and Deed of Trust.

144.   Defendants enjoyed substantial discretionary power affecting the Plaintiff's rights under the Deed of Trust as detailed throughout this Complaint.  Defendants are required to exercise such power in good faith.

145.   Defendants breached their duty of good faith by interfering with Plaintiff's ability to perform his obligations under the contract because Defendants improperly

---

[10] *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983); *Harm v. Frasher,* 181 Cal. App. 2d 405, 417 (1960).

[11] "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 (internal citation omitted). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.  The covenant thus cannot " 'be endowed with an existence independent of its contractual underpinnings.' " " It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-350 (2000) (citations omitted).

applied mortgage payments, incorrectly calculated interest, and improperly added fees to Plaintiff's account making it impossible for Plaintiff to ever fulfill her obligations. Defendants' failure to cooperate allowed them to collect more money from Plaintiff than they were owed.[12]

146.    Plaintiff could not have reasonably known of the existence of a breach of the implied covenant of good faith and fair dealing claim because Defendants fraudulently concealed the fact that they were not applying payments in accordance with the Deed of Trust thereby interfering with the Plaintiff's ability to perform under the contract.  Defendants concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiff's account and continued to render Plaintiff's performance of the contract impossible.

147.    As a proximate result of Defendants' breaches, Plaintiff has suffered general and special damages in an amount to be proven at trial.

148.    Plaintiff relied on JPMorgan and/or U.S. Bank's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether she sent her monthly mortgage payments to the right party; (5) her credit and credit score have been damaged; and (6) she has expended significant funds to cover the cost of attorneys' fees and related costs.

/ / /

/ / /

---

[12] Witkin, Summary of California Law, Contracts, §744 (8th ed.); *see also Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314 (1997); *Harm v. Frasher*, 181 Cal. App. 2d 405, 415 (1960).

WHEREFORE, Plaintiff prays as follows:

1.      For compensatory, special, and general damages in an amount according to proof at trial, but not less than $5,000,000, against all Defendants;

2.      For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.      For an order compelling Defendants to remove any instrument, including the Assignment of Deed of Trust, which does or could be construed as constituting a cloud upon Plaintiff's title to the Property;

4.      For a declaratory judgment finding that Defendants do not have any legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust, or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff;

5.      For the Court to issue an order restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing so during the pendency of this matter;

6.      For an order compelling Defendants to disgorge all amounts wrongfully taken from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

7.      For costs of suit incurred herein;

8.      For reasonable attorneys' fees incurred; and

9.      For such other and further relief as the Court may deem proper.

Dated:        November 16, 2011                PROSPER LAW GROUP, LLP

                                              By:    [signature]
                                                     Gordon F. Dickson
                                                     Deborah P. Gutierrez
                                                     Vincent C. Granberry
                                                     Attorneys for Plaintiff,
                                                     Carmen R. Naranjo

FIRST AMENDED COMPLAINT                                                        -30-

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff Carmen R. Naranjo hereby demands a trial by jury on all claims.

3

4   Dated:        November 16, 2011              PROSPER LAW GROUP, LLP

5

6                                        By:

7                                              Gordon F. Dickson
                                               Deborah P. Gutierrez
8                                              Vincent C. Granberry
                                               Attorneys for Plaintiff,
9                                              Carmen R. Naranjo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                                        -31-

1

## PROOF OF SERVICE

2

### Carmen Naranjo v. SBMC Mortgage, et al.
### United States District Court- Southern District of California case no. 11CV2229 L (MVGx)

3

4      I am a resident of the State of California, over the age of eighteen years, and not a party
to the within action. My business address is Prosper Law Group, LLP, 6100 Center Drive, Suite

5      1050, Los Angeles, CA 90045. On November 16, 2011, I served the following document(s) by
the method indicated below:

6                          **FIRST AMENDED COMPLAINT**

[ ]     by transmitting via facsimile on this date the documents listed above to the facsimile

7         numbers set forth below. The transmission was completed before the close of business
and was reported complete and without error.

8

[X]     by placing the document(s) listed above in a sealed envelope via U.S. mail with postage

9         thereon fully prepaid, in the United States Office at Los Angeles, California addressed as
set forth below. I am readily familiar with the firm's practice of collection and

10        processing of correspondence for mailing. I am aware that on motion of the party served,
service is presumed invalid if the postal cancellation date on postage meter date is more

11        than one day after the date of deposit in this Declaration.

12 [ ]     BY CM/ECF ELECTRONIC DELIVERY: In accordance with the registered case
participants and in accordance with the procedures set forth at the United States District

13        Court, Central District of California website https://ecf.cacd.uscourts.gov.

14 [ ]     by placing the document(s) listed above in a sealed envelope(s) and consigning it to an
express mail service for guaranteed delivery on the next business day following the date

15        of consignment to the address(es) set forth below. A copy of the consignment slip is
attached to this proof of service.

16

17                          **(See attached service list)**

I declare under penalty of perjury under the laws of the United States that the above is

18 true and correct.

19      Executed on November 16, 2011, Los Angeles, California.

20

21

22                                    Brittany Auchard

23

24

25

26

27

28

1

PROOF OF SERVICE

1

**<u>Service List</u>**

2

**<u>Carmen Naranjo v. SBMC Mortgage, et al.</u>**
**<u>United States District Court- Southern District of California case no. CV11-2229 L</u>**

3

**<u>(MVGx)</u>**

4

<u>Attorney for Defendant JPMorgan Chase and U.S. Bank N.A. As Trustee for WAMU Mortgage</u>

5

<u>Pass-Through Certificates WMALT Series 2006-AR4 Trust</u>

6

BRYAN CAVE LLP
3161 Michelson Drive, Suite 1500

7

Irvine, CA 92612

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2