1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18

| | | |
|---|---|---|
| CARMEN R. NARANJO, | ) | Case No. 11-cv-2229-L(WVG) |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANTS'** |
| v. | ) | **MOTION TO DISMISS [DOC. 12]** |
| | ) | |
| SBMC MORTGAGE, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

19    On September 29, 2011, Plaintiff Carmen R. Naranjo commenced this action against

20  Defendants SBMC Mortgage ("SBMC"),[1] JPMorgan Chase ("JPMorgan"), and U.S. Bank N.A.

21  After defaulting on her home loan, Plaintiff now sues Defendants in an attempt to prevent

22  foreclosure of the property securing the loan.  Defendants now moves to dismiss the First

23  Amended Complaint ("FAC").  Plaintiff opposes.

24    The Court found this motion suitable for determination on the papers submitted and

25  without oral argument.  *See* Civ. L.R. 7.1(d.1).  (Doc. 15.)  For the following reasons, the Court

26  **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

27

28    [1] Plaintiff has since voluntarily dismissed SBMC Mortgage from this action.  (Doc. 8.)

11cv2229

# I.     BACKGROUND[2]

On or about February 21, 2006, Plaintiff executed a promissory note in favor of SBMC Mortgage ("SBMC") in the amount of $825,000.00, secured by a deed of trust ("DOT"), to finance real property located in La Jolla, California.  (FAC ¶¶ 1, 15 [Doc. 10].[3])  The DOT, attached as Exhibit E to the FAC, identified Plaintiff as Borrower, SBMC Mortgage as Lender, T.D. Service Co. as Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as both nominee and beneficiary under the security instrument.  (DOT 1.)

Shortly thereafter, SBMC sold her loan to a currently unknown entity or entities.  (FAC ¶ 15.)  Plaintiff alleges that these unknown entities and Defendants were involved in an attempt to securitize the loan into the WAMU Mortgage Pass-through Certificates WMALT Series 2006-AR4 Trust ("WAMU Trust").  (*Id.* ¶ 17.)  However, these entities involved in the attempted securitization of the loan "failed to adhere to the requirements of the Trust Agreement necessary to properly assign the mortgage loan into the Trust."[4]  (*Id.*)  Specifically, Plaintiff alleges that her loan "was not properly assigned to the WAMU Trust on or before May 30, 2006, the 'Closing Date' as set forth in the Trust Agreement."  (*Id.* ¶¶ 17, 21.)  "The Closing Date is the date by which all of the notes and mortgages had to be transferred into the WAMU Trust in order for the mortgage loan to be a part of the trust res."  (*Id.* ¶ 21.)

In May 2009, Plaintiff sought to modify her loan with JPMorgan Chase Bank, N.A. ("JPMorgan") under the belief that it had the authority to negotiate her loan.  (FAC ¶¶ 22–24.)  However, she made little progress.  (*Id.*)  She continued to follow-up and submit loan-

---

[2] Defendants also request judicial notice for five documents, all of which are documents recorded in the Official Records of San Diego County.  (Request for Judicial Notice ("RJN") 1:1–2:1 [Doc. 12-2].)  These documents are central to Plaintiff's claims, and there is no question concerning the authenticity of these documents.  Moreover, Plaintiff has not opposed the request.  Accordingly, the Court **GRANTS** the request.  *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

[3] Paragraph 1 in the FAC states that Plaintiff executed the note with Countrywide.  After reviewing the moving papers, this appears to be a misidentification that will be treated as such.

[4] Plaintiff's references to the Trust Agreement and Pooling Services Agreement ("PSA") appear to be interchangeable.  (*See* Compl. ¶ 20.)

11cv2229

modification applications for over 19 months.  (*Id.* ¶ 27.)

In August 2009, Plaintiff was hospitalized, resulting in unforeseen financial hardship. (FAC ¶ 25.)  As a result, she defaulted on her loan.  (*See id.* ¶ 26.)

On May 26, 2010, Defendants recorded an Assignment of Deed of Trust, which states that MERS assigned and transferred to U.S. Bank as trustee for the WAMU Trust under the DOT.  (RJN Ex. B.)  Colleen Irby executed the Assignment as Officer for MERS.  (*Id.*)  On the same day, Defendants also recorded a Substitution of Trustee, which states that the U.S. Bank as trustee, by JP Morgan, as attorney-in-fact substituted its rights under the DOT to the California Reconveyance Company ("CRC").  (RJN Ex. C.)  Colleen Irby also executed the Substitution as Officer of "U.S. Bank, National Association as trustee for the WAMU Trust."  (*Id.*)  And again, on the same day, CRC, as trustee, recorded a Notice of Default and Election to Sell.  (RJN Ex. D.)

A Notice of Trustee's sale was recorded, stating that the estimated unpaid balance on the note was $989,468.00 on July 1, 2011.  (RJN Ex. E.)

On August 8, 2011, Plaintiff sent JPMorgan a Qualified Written Request ("QWR") letter in an effort to verify and validate her debt.  (FAC ¶ 35 & Ex. C.)  In the letter, she requested that JPMorgan provide, among other things, a true and correct copy of the original note and a complete life of the loan transactional history.  (*Id.*)  Although JPMorgan acknowledged the QWR within five days of receipt, Plaintiff alleges that it "failed to provide a substantive response."  (*Id.* ¶ 35.)  Specifically, even though the QWR contained the borrow's name, loan number, and property address, Plaintiff alleges that "JPMorgan's substantive response concerned the same borrower, but instead supplied information regarding an entirely different loan and property."  (*Id.*)

On September 26, 2011, Plaintiff commenced this action.  Thereafter, Plaintiff filed her FAC asserting nine claims: (1) declaratory relief; (2) negligence; (3) quasi contract; (4) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (6) violation of California Business and Professions Code § 17200; (7) accounting; (8) breach of contract; and (9) breach of

11cv2229

1  implied covenant of good faith and fair dealing.  Defendants now moves to dismiss the FAC in

2  its entirety with prejudice.  Plaintiff opposes.  (Doc. 14.)

3

4  **II.    LEGAL STANDARD**

5      The court must dismiss a cause of action for failure to state a claim upon which relief can

6  be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal

7  sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court

8  must accept all allegations of material fact as true and construe them in light most favorable to

9  the nonmoving party.  *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d

10  972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true.

11  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the court need not "necessarily

12  assume the truth of legal conclusions merely because they are cast in the form of factual

13  allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

14  (internal quotation marks omitted).  In fact, the court does not need to accept any legal

15  conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009)

16      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

17  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

18  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

19  of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  Instead, the

20  allegations in the complaint "must be enough to raise a right to relief above the speculative

21  level."  *Id.*  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

22  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct.

23  at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

24  pleads factual content that allows the court to draw the reasonable inference that the defendant is

25  liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability

26  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

27  *Id.*  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory

28  or for insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749

11cv2229

F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

## III.   DISCUSSION

Plaintiff's primary contention here is that Defendants "are not her true creditors and as such have no legal, equitable, or pecuniary right in this debt obligation" in the loan. (Pl.'s Opp'n 1:5–11.) She contends that her promissory note and DOT were never properly assigned to the WAMU Trust because the entities involved in the attempted transfer failed to adhere to the requirements set forth in the Trust Agreement and thus the note and DOT are not a part of the trust res. (FAC ¶¶ 17, 20.) Defendants moves to dismiss the FAC in its entirety with prejudice.

### A.      Applicability of *Gomes*

Plaintiff alleges that the May 2010 assignments are improper for two primary reasons: (1) the assignment of her loan into the WAMU Trust is improper because it was not assigned before the end of May 2006 as required by the Trust Agreement, and (2) the May 2010 assignments are improper because Collen Irby lacked the authority to execute the assignments. Defendants argue that like the borrower in *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011), Plaintiff seeks to "'test whether the person initiating the foreclosure has the authority to do so' without presenting *any* competent, particularized factual allegations or evidence Defendants 'lack[] authority to proceed with the foreclosure.'" (Defs.' Mot. 4:13–18.) They go on to explain that the assignments and notice of default and election to sell executed in May

11cv2229

1    2010 are proper.  (Defs.' Reply 3:26–4:4.)  However, Defendants put the cart before the horse.

2        The vital allegation in this case is the assignment of the loan into the WAMU Trust was

3    not completed by May 30, 2006 as required by the Trust Agreement.  This allegation gives rise

4    to a plausible inference that the subsequent assignment, substitution, and notice of default and

5    election to sell may also be improper.  Defendants wholly fail to address that issue.  (*See* Defs.'

6    Mot. 3:16–6:2; Defs.' Reply 2:13–4:4.)  This reason alone is sufficient to deny Defendants'

7    motion with respect to this issue.

8        Moving on, Defendants' reliance on *Gomes* is misguided.  In *Gomes*, the California Court

9    of Appeal held that a plaintiff does not have a right to bring an action to determine a nominee's

10   authorization to proceed with a nonjudicial foreclosure on behalf of a noteholder.  192 Cal. App.

11   4th at 1155.  The nominee in *Gomes* was MERS.  *Id.* at 1151.  Here, Plaintiff is not seeking such

12   a determination.  The role of the nominee is not central to this action as it was in *Gomes*.  Rather,

13   Plaintiff alleges that the transfer of rights to the WAMU Trust is improper, thus Defendants

14   consequently lack the legal right to either collect on the debt or enforce the underlying security

15   interest.

16

17       **B.    Declaratory Relief**

18       Declaratory relief is not an independent cause of action or theory of recovery, only a

19   remedy.  28 U.S.C. §§ 2201, 2202.  Where a substantive cause of action already exists in the

20   complaint, a plaintiff cannot assert a declaratory-relief claim as a "superfluous second cause of

21   action for the determination of identical issues."  *Jensen v. Quality Loan Serv. Corp.*, 702 F.

22   Supp. 2d 1183, 1189 (E.D. Cal. 2010) (internal quotation marks omitted).  To grant declaratory

23   relief, a district court must find an "actual controversy," which is "definite and concrete . . .

24   [and] real and substantial."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227,

25   240-41 (1937).

26       Plaintiff requests that the Court "make a finding and issue appropriate orders stating that

27   none of the named Defendants . . . have any right or interest in Plaintiff's Note, Deed of Trust, or

28   the Property which authorizes them . . . to collect Plaintiff's mortgage payments or enforce the

11cv2229

terms of the Note or Deed of Trust in any manner whatsoever." (FAC ¶ 50.) Defendant simplifies this as a request for "a determination of the ownership of [the] Note and Deed of Trust," which they argue is "addressed in her other causes of action." (Defs.' Mot. 6:16–20.) The Court disagrees with Defendants. As discussed above and below, there is an actual controversy that is not superfluous. Therefore, the Court **DENIES** Defendants' motion as to Plaintiff's claim for declaratory relief.

### C.    Negligence

"[T]o recover on a theory of negligence, [p]laintiffs must prove duty, breach, causation, and damages." *Truong v. Nguyen*, 156 Cal. App. 4th 865, 875 (2007). "The existence of a duty of care owed by defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 1096. "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

Plaintiff alleges that Defendants "have a duty to exercise reasonable care and skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they did not have legal authority to do." (FAC ¶ 56.) Defendants argue that they are the mortgage servicer and that Plaintiff fails to "plead facts supporting a finding that Defendants' conduct exceeded the scope of a conventional mortgage servicer." (Defs.' Mot. 7:5–7.) Plaintiff responds that JPMorgan's mishandling of the loan-modification applications and failure to afford a loan modification is "beyond the domain of a usual money lender." (Pl.'s Opp'n 17:24–18:19.) However, there is no common-law duty to modify a contract. *Vella v. Hudgins*, 151 Cal. App. 3d 515, 519 (1984). Thus, Plaintiff fails to allege facts as to the loan-modification process that maintain her claim for negligence.

11cv2229

1    Defendants also argue that they have "clearly established they had such authority" to

2    collect payments.  (Defs.' Reply 5:28–6:5.)  However, as discussed above, they have not.

3    Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants'

4    motion as to Plaintiff's negligence claim.  Given that the legal authority of Defendants that

5    derive from the allegedly improper assignment of rights to the WAMU Trust is central to this

6    action, Plaintiff may pursue her claim on that ground.  However, that said, the Court

7    **DISMISSES WITHOUT PREJUDICE** Plaintiff's negligence claim insofar as it relies on facts

8    alleged regarding the loan-modification process, which are insufficient to maintain her

9    negligence claim.

10

11        **D.    Quasi-Contract**

12    A claim for quasi-contract is synonymous with one for unjust enrichment.  *FDIC v.*

13   *Dintino*, 167 Cal. App. 4th 333, 346 (2008).  Unjust enrichment requires the receipt of a benefit

14   and the unjust retention of that benefit at the expense of another.  *Peterson v. Cellco P'ship*, 164

15   Cal. App. 4th 1583, 1593 (2008).  However, "California courts appear to be split on whether

16   unjust enrichment can be an independent claim or merely an equitable remedy."  *Falk v. Gen.*

17   *Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007); *see Bernardi v. JPMorgan Chase*

18   *Bank, N.A.*, No. 11-cv-4212, 2012 WL 2343679, at *3 (N.D. Cal. June 20, 2012) (noting that

19   quasi-contract is not an independent cause of action under California law, and thus the claim is

20   subject to dismissal for that reason alone).

21    Defendants argue that Plaintiff's quasi-contract claim fails because "[t]he Deed of Trust

22   is an express binding agreement that defines the parties' rights."  (Defs.' Mot. 7:8–16.)  Plaintiff

23   responds that she "was not paying her true creditor because there was no valid assignment that

24   allowed [Defendants] to collect on her debt obligation."  (Pl.'s Opp'n 19:3–13.)  As discussed

25   above, Plaintiff sufficiently alleges facts that put Defendants' legal rights that derive from the

26   Trust Agreement in question.  Consequently, Plaintiff adequately alleges facts that show

27   Defendants were unjustly enriched in collecting payments based on those presumed rights.

28   Therefore, the Court **DENIES** Defendants' motion as to Plaintiff's quasi-contract claim.

11cv2229

### E.    FDCPA

"The [FDCPA] prohibits debt collector[s] from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).  To be liable for an FDCPA violation, a defendant must, as a threshold matter, be a "debt collector" within the meaning of those acts. *Id.* at 294.

Under the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  This definition includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* § 1692a(6).  The FDCPA does not, however, cover "the consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned." *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also* 15 U.S.C. § 1692a(4) (defining "creditor").  Consequently, a loan servicer is not a debt collector if it acquired the loan before the borrower was in default. *See Schlegel v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100, 1103-04 (N.D. Cal. 2011).

Defendants argue that they are not "debt collectors" within the meaning of the FDCPA. (Defs.' Mot. 9:13–15.)  That argument is predicated on the presumption that all of the legal rights attached to the loan were properly assigned.  Plaintiff responds that Defendants are debt collectors because U.S. Bank's principal purpose is to collect debt and it also attempted to collect payments.  (Pl.'s Opp'n 19:23–27.)  She explicitly alleges in the FAC that U.S. Bank has attempted to collect her debt obligation and that U.S. Bank is a debt collector.  Consequently, Plaintiff sufficiently alleges a claim under the FDCPA.

Defendants also argue that the FDCPA claim is time barred.  (Defs.' Mot. 7:18–27.)  A FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).  Defendants contend that the violation occurred when the allegedly false

11cv2229

assignment occurred on May 26, 2010.  (Defs.' Mot. 7:22–27.)  However, Plaintiff alleges that U.S. Bank violated the FDCPA when it attempted to enforce Plaintiff's debt obligation and collect mortgage payments when it allegedly had no legal authority to do so.  (FAC ¶ 72.)  Defendants wholly overlook those allegations in the FAC.  Thus, Defendants fail to show that Plaintiff's FDCPA claim is time barred.

Accordingly, the Court **DENIES** Defendants' motion as to Plaintiff's FDCPA claim.

### F.    RESPA

"RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan." *Morris v. Bank of America*, No. C 09-02849, 2011 WL 250325, at *4 (N.D. Cal. Jan. 26, 2011) (citing 12 U.S.C. § 2605(b)).  Under RESPA, a Qualified Written Response ("QWR") is "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A).  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2603(i)(3).  Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B).  It must also include the name and account of the borrower. *Id.*

Defendants argue that Plaintiff's letter does not constitute a QWR because it requests a list of unsupported demands rather than specific particular errors or omissions in the account along with an explanation from the borrower why she believes an error exists.  (Defs.' Mot. 10:4–13.)  However, the letter explains that it "concerns sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive, and fraudulent accounting tricks and practices that may have also negatively affected any credit rating, mortgage account and/or the debt or payments that [Plaintiff] may be

11cv2229

obligated to." (FAC Ex. C.)  The letter goes on to put JPMorgan on notice of

> potential abuses of J.P. Morgan Chase or previous servicing companies or previous servicing companies [that] could have deceptively, wrongfully, unlawfully, and/or illegally: Increased the amounts of monthly payments; Increased the principal balance Ms. Naranjo owes; Increased the escrow payments; Increased the amounts applied and attributed toward interest on this account; Decreased the proper amounts applied and attributed toward the principal on this account; and/or[] Assessed, charged and/or collected fees, expenses and miscellaneous charges Ms. Naranjo is not legally obligated to pay under this mortgage, note and/or deed of trust.

(*Id.*)  Based on the substance of letter, the Court cannot find as a matter of law that the letter is not a QWR.

Defendants also argue that the RESPA claim fails because Plaintiff fails to plead actual damages arising from JPMorgan's alleged failure to respond.  (Defs.' Mot. 10:14–19.)  To state a claim for relief under RESPA, a plaintiff must allege either a purported pattern or practice of violating the statute or actual damages caused by the asserted violation.  12 U.S.C. § 2605(f); *Fonua v. First Allied Funding*, No. C 09-497, 2009 WL 816291, at *3 (N.D. Cal. Mar. 27, 2009).  Here, Plaintiff alleges "actual pecuniary damages" that include costs related to damage to her credit.  (FAC ¶ 91.)  That is a sufficient allegation of actual damages.  *See Wise v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2012 WL 105887, at *6 (C.D. Cal. 2012).

Accordingly, the Court **DENIES** Defendants' motion as to Plaintiff's RESPA claim.


### G.    California Business and Professions Code § 17200 (Unfair Competition Law)

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant.  *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Plaintiff alleges that Defendants violated the UCL by collecting payments that they lacked the right to collect, and engaging in unlawful business practices by violating the FDCPA and RESPA.

//

//

//

11cv2229

1        **1.    Standing**

2        Standing to bring a UCL claim requires "a person who has suffered injury in fact and has

3    lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

4    To have standing under the UCL, a plaintiff must sufficiently allege that (1) she has lost "money

5    or property" sufficient to constitute an "injury in fact" under Article III of the Constitution, and

6    (2) there is a "causal connection" between the defendant's alleged UCL violation and the

7    plaintiff's injury in fact.  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010)

8    (citing *Birdsong v. Apple, Inc.*, 590 F.3d 959-60 (9th Cir. 2009); *Hall v. Time Inc.*, 158 Cal. App.

9    4th 847, 855-56 (2008)).

10        Defendants argue that Plaintiff's allegation regarding a cloud on her title does not

11    constitute an allegation of loss of money or property, and even if Plaintiff were to lose her

12    property, she cannot show it was a result of Defendants' actions.  (Defs.' Mot. 12:22–13:4.)  The

13    Court disagrees.  As discussed above, Plaintiff alleges damages resulting from Defendants'

14    collection of payments that they purportedly did not have the legal right to collect.  These

15    injuries are monetary, but also may result in the loss of Plaintiff's property.  Furthermore, these

16    injuries are causally connected to Defendants' conduct.  Thus, Plaintiff has standing to pursue a

17    UCL claim against Defendants.

18

19        **2.    Unlawful, Unfair or Fraudulent Conduct**

20        Under the UCL, there are three varieties of unfair competition—business acts or practices

21    that are unlawful, unfair, or fraudulent.  Cal. Bus. & Prof. Code § 17200.  "Each prong of the

22    UCL is a separate and distinct theory of liability," each offering "an independent basis for

23    relief."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  Furthermore, a claim

24    under § 17200 is "derivative of some other illegal conduct or fraud committed by a defendant,

25    and '[a] plaintiff must state with reasonable particularity the facts supporting the statutory

26    elements of the violation.'"  *Benham v. Aurora Loan Servs.*, No. C-09-2059, 2009 WL 2880232,

27    at *4 (N.D. Cal. Sept. 1, 2009) (quoting *Khoury*, 14 Cal. App. 4th at 619).

28    //

11cv2229

1  Defendants argue that Plaintiff fails to plead an unlawful, fraudulent, and unfair act.

2  (Defs.' Mot. 13:5–15:3.)  Specifically, with respect to pleading a fraudulent act, Defendants

3  contend that Plaintiff fails to meet the heightened pleading standard required to allege fraud

4  against a corporation.  (*Id.* at 14:4–20.)  Plaintiff responds that she satisfies the unlawful prong

5  through her allegations that Defendants' business practices violated the FDCPA and RESPA,

6  and the fraudulent prong because "Defendants' business pattern, collecting debt they have no

7  right to, is extremely likely to deceive both Plaintiff[] and the public."  (Pl.'s Opp'n 22:5–18.)

8  As discussed above, Plaintiff alleges cognizable theories of liability, including, among

9  others, violations of the FDCPA and RESPA.  Thus, Plaintiff may proceed with her UCL claim

10  under the unlawful prong.

11  The fraudulent prong requires a plaintiff to have "actually relied" on the alleged

12  misrepresentation to her detriment.  *In re Tobacco II Cases*, 46 Cal. 4th 326, 330 (2009).

13  Moreover, under Federal Rule of Civil Procedure 9(b), the "circumstances constituting fraud" or

14  any other claim that "sounds in fraud" must be stated "with particularity."  Fed. R. Civ. P. 9(b);

15  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  This standard requires,

16  at a minimum, that a plaintiff plead evidentiary facts, such as time, place, persons, statements,

17  and explanations of why the statements are misleading.  *See In re GlenFed, Inc. Sec. Litig.*, 42

18  F.3d 1541, 1547-48 (9th Cir. 1994) (en banc).  Plaintiff fails allege facts that satisfy these

19  heightened requirements.  (*See* FAC ¶¶ 95–123.)

20  Finally, Plaintiff fails to respond to Defendants' argument that she fails to allege facts to

21  satisfy the unfairness prong.  (*See* Pl.'s Opp'n 22:5–18.)  The only mention of the unfairness

22  prong in Plaintiff's opposition is a conclusory assertion that Defendants engaged in unfair

23  practices.  (*Id.* at 22:5–6.)  Thus, it appears that Plaintiff has abandoned this ground of her UCL

24  claim.

25  In sum, Plaintiff has standing to pursue her UCL claim.  Furthermore, the Court

26  **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as to the UCL claim.

27  Plaintiff may pursue her UCL claim under the unlawful prong, but the Court **DISMISSES**

28  **WITHOUT PREJUDICE** the UCL claim under the fraudulent and unfairness prongs.

11cv2229

**H.  Accounting**

Accounting "is not an independent cause of action but merely a type of remedy and an equitable remedy at that." *Batt v. City & Cnty. of San Francisco*, 155 Cal. App. 4th 65, 82 (2007).  An accounting may be brought to compel a defendant to account to a plaintiff for money where (1) a fiduciary duty exists, or (2) where no fiduciary duty exists, "the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977).

Plaintiff alleges that Defendants owe a fiduciary duty in their capacities as creditor and mortgage servicer.  (FAC ¶ 125.)  She pursues this claim on the grounds that Defendants collected payments from her that they had no right to do.  Defendants argue that various documents recorded in the Official Records of San Diego County from May 2010 show that Plaintiff fails to allege facts sufficient to state a claim for accounting.  (Defs.' Mot. 16:1–3.)  Defendants are mistaken.  As discussed above, a fundamental issue in this action is whether Defendants' rights were properly assigned in accordance with the Trust Agreement in 2006.  Plaintiff alleges facts that allows the Court to draw a reasonable inference that Defendants may be liable for various misconduct alleged.  *See Iqbal*, 129 S. Ct. at 1949.

Therefore, the Court **DENIES** Defendants' motion as to Plaintiff's accounting claim.

**I.  Breach of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing[5]**

A claim for breach of contract requires that a plaintiff plead: (1) the existence of a contract, (2) a breach of the contract by defendant, (3) performance or excuse of non-performance on behalf of the plaintiff, and (4) damages suffered by the plaintiff as a result of the defendant's breach.  *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104

---

[5] Plaintiff pleads her claims for breach of contract and breach of the implied covenant of good faith and fair dealing "[i]n the alternative, if the Court finds that U.S. Bank is a successor in interest to the Deed of Trust."  (FAC ¶¶ 129, 140.)  Though the Court has not found that U.S. Bank is the successor in interest, the Court will address the sufficiency of these claims for the sake of completion.

1   (1989).  Every contract also contains an implied covenant of good faith and fair dealing that

2   "neither party will do anything which will injure the right of the other to receive the benefits of

3   the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000)

4   (internal quotation marks omitted).  Thus, "the implied covenant of good faith and fair dealing

5   protects only the parties' right to receive the benefit of their agreement." *Foley v. Interactive*

6   *Data Corp.*, 47 Cal. 3d 654, 698 n.39 (1988).  "[T]he implied covenant will only be recognized

7   to further the contract's purpose; it will not be read into a contract to prohibit a party from doing

8   that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures &*

9   *Television*, 162 Cal. App. 4th 1107, 1120 (2008).

10          Defendants argue that Plaintiff fails to allege facts that constitute a breach of contract or a

11   breach of the implied covenant of good faith and fair dealing.  (Defs.' Reply 8:21–27.)  The

12   Court agrees.  Plaintiff alleges that Defendants breached the contract by failing to follow Section

13   2 of the DOT, which in turn "resulted in improper fees and taxes being added to the balance of

14   the Loan," but fails to allege detailed facts demonstrating that Defendants indeed failed to

15   comply with the DOT.  (*See* FAC ¶¶ 133–36.)  For example, she does not identify which

16   payments were misapplied, when they were misapplied, and for how much.

17          Therefore, the Court **GRANTS** Defendants' motion as to Plaintiff's claim for breach of

18   contract and breach of the implied covenant of good faith and fair dealing.[6]  Accordingly, the

19   Court **DISMISSES WITHOUT PREJUDICE** both of these claims.

20

21   **IV.    CONCLUSION & ORDER**

22          In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART**

23   Defendants' motion to dismiss.  The Court also **DENIES** Defendants' motion to strike

24   Plaintiff's request for attorneys' fees on the grounds that they fail to make the request under the

25   appropriate Federal Rule of Civil Procedure.  If Plaintiff decides to file a Second Amended

26

27          [6] In the absence of a breach-of-contract claim, the Court also dismisses Plaintiff's claim

28   for breach of the implied covenant of good faith and fair dealing.

11cv2229

Complaint, she must do so by **August 7, 2012**.

     **IT IS SO ORDERED.**


DATED: July 24, 2012

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

11cv2229